# CHARLESTOWN.

## STATE OF WEST VIRGINIA *v.* DONOHOO.

Submitted September 19, 1883—Decided September 29, 1883.

1. It is not error upon the trial of an indictment for shooting with intent to kill to charge the jury in general terms, "that if all the evidence and circumstances of the case warrant the finding,

they may find the prisoner guilty of the offence charged in the indictment, or if all the facts and circumstances of the case warrant such finding, the jury may find the prisoner guilty of a part of the offence charged in said indictment, whether such part be a felony or misdemeanor." If the prisoner had desired the court to give the jury more specific instructions as to what they might find, if warranted by the evidence, he'should have asked the court to so instruct the jury. (p. 763.)

2. It was not error to refuse to instruct the jury, that evidence of good character cannot be received. in behalf of the prisoner, until his character has been assailed. (p. 764.)

3. In reviewing the judgment of the court below the Appellate Court will not reverse the judgment and set aside the verdict, on the ground that there is a doubt of its correctness; but the court must be satisfied, that the evidence is plainly insufficient to warrant the verdict. (p. 765.)

The opinion contains a statement of the facts of the case.

*John H. Riley* for plaintiff in error.

*Attorney-General Watts* for the State.

JOHNSON, PRESIDENT:

Harrison Donohoo was on the 3d day of November, 1882, indicted in the circuit court of Jackson county for shooting with intent to kill. To the indictment he pleaded not guilty,

He was tried before a jury, and on the 29th day of March, 1883, the jury rendered a verdict of not guilty of *malicious* shooting with intent to kill, but of "*unlawfully* shooting with intent to kill." On March 21, 1883, the court entered judgment upon the verdict, fixing his term in the penitentiary at two years.

To this judgment the prisoner obtained a writ of error.

The prisoner saved three bills of exceptions to the rulings of the court. The first bill of exceptions is to the giving of the following instruction to the jury: "The jury are instructed that if all the evidence and circumstances of the case warrant such finding, they may find the prisoner guilty of the offence as charged in the indictment, or if all the evidence and circumstances of the case warrant such finding, the jury may find the prisoner guilty of part of the offence charged in said

indictment, if such part be substantially charged in said indictment, whether such part be a felony or a misdemeanor." The giving of this instruction was objected to by the prisoner, the objection overruled, and the instruction given, and the court added to the instruction the words : "That under the indictment in this case the jury might, if warranted under all the evidence and circumstances of this case, find defendant guilty of an assault, in which case the punishment would be by fine." The prisoner excepted.

We think there is nothing in this instruction or the addition made thereto by the court to the prejudice of the prisoner. The jury is instructed in general terms, that if the evidence warrants it, they may find the prisoner guilty of the offence charged in the indictment, or of a lower offence, even a misdemeanor. This is correct. If the defendant had wished the charge to be more specific, it was his right to ask it. He did not do so, and we see no error in giving the instruction in the general form, as it states the law correctly. It is objected to the addition made to the instruction by the court, that it was immaterial that the jury should know the penalties prescribed for the various offences charged. This is true, since the court now under our statute fixes the punishment in both felony and misdemeanor cases. But the prisoner in this case clearly was not injured by the court telling the jury that an assault was punishable by fine.

The second bill of exceptions sets out, that in the argument "one of the attorneys appearing for the State expresssed regret, that defendant had not put his character in issue, as he had a right to do; that if that had been done, the State would have shown defendant to have a bad character, and that defendant was a terror to the neighborhood where he lived; defendant's counsel having insisted that defendant was presumed innocent until proved guilty, and stood as fair before the jury as any person." "When the attorney for the State made the remark above quoted, attention was called to it by counsel for accused, when said attorney for the State replied, that he would not have made such a statement, if the character of the accused had not been mentioned by his counsel; and when the arguments of counsel were concluded, and before the jury had retired, the defendant asked the court to

give to the jury four several instructions numbered 1, 2, 3 and 4, respectively, in words following:

" '1. The jury are instructed, that in order to convict the defendant of any offence in this case, they must be satisfied beyond a reasonable doubt, that defendant did maliciously or unlawfully shoot, beat, wound, or ill-treat Wm. Canter, with intent to maim, disfigure, disable or kill said Wm. Canter.'

" '2. The jury are instructed, that the good character of accused is presumed, and evidence to support it could not have been received, until it was assailed.'

" '3. The jury are instructed, that the defendant is presumed innocent, until he is proved guilty beyond a reasonable doubt, and that statements of counsel, that he is a terror to the people where he lives, are to be disregarded.'

" '4. The jury are instructed, that if the defendant offered no evidence of his good character, no legal inference can arise from such omission, that he is guilty of the offence charged, or that his character is bad.' "

The court gave the 1st, 3d and 4th instructions and refused to give the 2d, to which refusal the defendant excepted. There was clearly no error in refusing the second instruction. While the defendant's character is presumed to be good, until it is impeached, it is always admissible for him to put in evidence, that his character was such as to make it unlikely, that he would have perpetrated the act charged upon him. (Wharton's Cr. Ev. § 57.) Unless the defendant puts his character in issue, the prosecution cannot call witnesses to impeach it. (Whar. Cr. Ev. § 64 and cases cited.) It would have been laying down the law incorrectly to have said to the jury, that evidence of good character could not have been received in behalf of the prisoner, until it had been assailed by the State. The court properly refused the second instructions.

It is also assigned as error, that the court permitted the attorney for the State to make the statements he did in reference to the character of the accused. It is a sufficient answer to this assignment to say it does not appear from the exception, that the statement was made under the permission of the court. It does not appear, that anything on the subject was said by the attorney for the State, after the atten-

tion of the court was called to the remarks, except that the attorney for the State said, that "he would not have made such statement, if the character of the accused had not been mentioned by his counsel." At the instance of the defendant, the court instructed the jury to disregard the statement of the attorney for the State as to the character of defendant.

The *third* bill of exceptions is to the overruling of prisoner's motion for a new trial, on the ground that the verdict was contrary to the law and evidence. The bill certifies all the evidence in the case. The evidence shows clearly, that defendant shot Wm. Canter, the prosecuting witness, in the leg; that at the time the shot was fired, George Canter was in a scuffle with prisoner. William Canter testified: "Defendant came at witness with his revolver in his hand. He shot witness in the leg. Witness supposed defendant shot at him with a revolver No. 32. Defendant and witness had no particular trouble before that time. * * * Defendant came out of the house with a revolver in his hand. Witness caught hold of defendant by the wrists at the bars to keep him from shooting witness. Defendant shot witness while George Canter had defendant down on one knee. It occurred a minute or two after witness had hold of defendant. * * When shot was fired George Canter was between witness and defendant. Defendant's hand and revolver were extended past George Canter and pointed at witness."

William Durst testified: "Defendant asked witness for a revolver; do not know whether before or after the shooting, think it was before. When shot was fired, defendant was backing out and telling the Canters to stand back."

There was considerable evidence tending to show that the pistol was fired accidentally. The evidence is quite conflicting.

In *Laurence's Case*, 30 Gratt. 845, the venerable Moncure, President, after citing authorities said: "But without reviewing these authorities or the facts certified in the record as having been proved on the trial, we are of opinion, that while we would probably have given a verdict of not guilty, if we had been upon the jury, or set aside the verdict, which was given, and granted a new trial, if we had presided at the trial, yet it is not a case, in which this court can properly reverse the judgment for any supposed error therein."

In reviewing the judgment of the court below the Appellate Court will not reverse the judgment on the ground that there is a doubt of its correctness; but it must be satisfied that the evidence is plainly insufficient to warrant the verdict. (*Grayson's Case*, 6 Gratt. 712; *Vaiden's Case*, 12 Gratt. 717; *Read's Case*, 22 Gratt. 924; *Pry's Case*, 27 Gratt. 1009; *William's Case*, 14 W. Va. 851; *Thompson's Case*, 21 W. Va. 741.)

We are unable to say that the evidence in this case, is plainly insufficient to warrant the verdict. The judgment is affirmed.

THE OTHER JUDGES CONCURRED.

AFFIRMED.