### CLEVELAND ANDREWS v. THE STATE.

No. 1608. Decided November 22, 1911.

**1.—Burglary—Accomplice—Charge of Court.**

Where, upon trial of burglary, there was some testimony corroborating that of the accomplice, there was no error to submit this issue to the jury.

**2.—Same—Withdrawal of Testimony—Practice.**

Where, upon trial of burglary, the inculpatory testimony was not very strong, the admission of illegal testimony which was material was not cured by its subsequent withdrawal.

**3.—Same—Impeaching Own Witness.**

Where the State's witness had not testified to any fact that could or would surprise the district attorney, but had merely failed to testify to what he apparently expected him to testify, it being his own witness, it was not permissible for him to lay a predicate to impeach the witness by the manner of his questions and thus get before the jury testimony otherwise inadmissible; and a withdrawal of such testimony could not cure the error.

**4.—Same—Rule Stated.**

If the illegal testimony was of a material character and calculated to influence the jury, a withdrawal of the same would not cure the vice of its admission.

**5.—Same—County Convict—Witness.**

The fact that defendant was a county convict would not render his statements inadmissible.

Appeal from the District Court of Panola. Tried below before the Hon. W. C. Buford.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. N. Nelson,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with burglary, and when tried was convicted and sentenced to two years confinement in the penitentiary, from which judgment he appeals.

The appellant in his motion for a new trial vigorously assails the judgment on the ground that the judgment does not support the verdict. Some meat, flour and other things were stolen from Mr. George Furrh, and these articles were taken out of his smokehouse. This much is proven beyond a reasonable doubt, but the question presented is, does the evidence prove that defendant was the person committing the theft? Mr. Furrh states he left defendant and another negro at his house when he went away; both negroes worked for him, and ate at his house. This witness states no fact that would incriminate defendant, except to place him in position to commit the offense. The witness Louis Jones states he was passing Mr. Furrh's when he saw a man come out from between the smokehouse and the kitchen, and that the man had a bundle under his arm and one in his hand. That he took it to be defendant, and spoke to him, saying, "Is that you, Cleveland?" no answer being returned. That on Monday, after two negro women were arrested charged with the offense, this witness says defendant came to him and asked him

if he had seen him, and witness told him that he had seen him between Mr. Furrh's smokehouse and kitchen, when defendant replied that it was not him. Witness says he saw somebody and took it to be defendant, because defendant worked at that place. The evidence further shows that defendant fled that night and went from Panola County to Rockwall County, where he was arrested some four or five months later. The witness Mollie Lefoff, in whose house the meat was found, the constable says, first told him that Nelson Adams had given it to her, but on the trial of this case the witness denies making such statement to the constable, and says that after defendant was arrested, and while out on bond, he had admitted to her he carried the meat to her house, and that he had gotten it out of the smokehouse.

The court charged the jury that the witness Mollie Lefoff was an accomplice, and that the testimony other than hers must tend to connect the defendant with the commission of the offense. The only circumstances connecting him with the offense, in addition to her testimony, is that of the witness Jones, who testifies that he saw a man coming from between the smokehouse and kitchen with a couple of bundles, and asked, "Is that you, Cleveland?" and that defendant came to him the following Monday, and asked him if he had seen him (defendant), and when the witness told him he had, defendant fled the county. While this testimony is not very convincing, yet the credibility of witnesses and the weight to be given the testimony under our law is for the jury, and where there is testimony authorizing their verdict, and no evidence offered that it is not true, we are not disposed to disturb the verdict.

The State introduced the witness Louis Jones, and after the witness had testified as hereinbefore stated, the following proceedings were had, which were objected to in bill of exceptions No. 3: "Q. Go ahead and tell me what you told me in that room about that transaction. (Defendant: We object to that suggestion. Court overruled the objection.)

"He said that they had arrested Mollie and Stella for getting Mr. Furrh's meat, and I told Cleveland; I been telling you all the year to let Stella alone, that she has been against you, and that if I was like you I would let her alone, and that if they get together they'll prove you got that meat and they might send you to the penitentiary; and he says, 'Well, I didn't get it.'

"Q. To refresh your memory, didn't you tell me there in the room awhile ago that he said that she was innocent of the transaction, and that if it was not for sending him to the pen he would tell the truth about that? 'He didn't tell me that.'

"Q. Didn't you state in the presence of Mr. Anderson and Mr. Furrh and me in the room there the next day when you had the conversation with him about the arresting of the women that he said his wife was innocent of the transaction, and that if it was not for

sending him to the pen he would tell the truth about it? 'That was not me that told you that.'

"Q. Didn't you tell me that you knew that it was Cleveland on that night, and you were able to see that it was Cleveland coming out from between the smokehouse and the kitchen? 'I told you that when I was passing Mr. Furrh's I saw someone coming from between Mr. Furrh's house and the smokehouse and I taken it to be Cleveland, and hollered at him, but he didn't answer.' (Defendant: We are objecting to all this; he is trying to build a case on something that didn't happen in the presence of the defendant, and we object to the manner of the question and to the question, and it appears like he is trying to build a case by trying to impeach his own witness and get his own testimony before the jury when the witness has answered his question promptly. District attorney: I am not offering it as original testimony; I am laying a predicate for the purpose of impeachment; he tells me a tale now and told me a different tale in the room awhile ago.)"

In his charge the court tells the jury not to consider this testimony, nor any reference thereto in the argument, but in a case like this where the testimony is not very strong, will the withdrawal cure the error in admitting the testimony? Will its effect on the minds of the jury be thus removed? The district attorney in asking the questions in the form he does, states that the witness had so informed him, and states, when objected to: "I am not offering it as original testimony; I am laying a predicate for impeachment. He tells me a tale now, and told me a different tale in the room awhile ago," thus informing the jury that the witness had so told him. The witness had not testified to any fact that could or would° surprise the district attorney, but had merely failed to testify to what he apparently expected him to testify, and being his own witness, was it permissible to permit him to lay a predicate to impeach him, and thus get before the jury evidence otherwise inadmissible? In Bailey v. State, 37 Texas Crim. Rep., 579, it is held: "A party can only impeach his own witness when such witness has testified to some damaging fact, and mere failure to testify does not give the right to impeach him." In Williford v. State, 36 Texas Crim. Rep., 414, it is held: "Where the State asked her own witness if the defendant did not make a certain declaration to the witness, which the witness denied or stated he did not remember, the answer of the witness is conclusive, and it is not competent for the State to show by other witnesses that the witness had so stated to others." And in Thomas v. State, 14 Texas Crim. App., 70, it is said: "A party can impeach his own witness only when he has testified to facts injurious to his cause. A mere negative answer, when the party expected an affirmative answer, will not give the right to contradict the witness." See also Bennett v. State, 24 Texas Crim. App., 73; Erwin v. State, 32 Texas Crim. Rep., 519; Kirk v. State, 35 Texas Crim. Rep.,

224; Shackelford v. State, 27 S. W. Rep., 8; Gibson v. State, 34 Texas Crim. Rep., 218, 29 S. W. Rep., 471, and Finley v. State, 47 S. W. Rep., 1015. Had the district attorney been satisfied with asking the question, and had accepted the answer of the witness, in view of the fact that the testimony was subsequently withdrawn, the error would not be such as we would feel called upon · to reverse the case, but when he follows it up by stating in the presence of the jury: "I am laying a predicate for the purpose of impeachment. He tells me a tale now and told me a different tale in the room · awhile ago," it was in effect the district attorney stating to the jury that the witness had told him in the room that defendant had admitted to the witness that he, defendant, had committed the offense for which he was being tried, and had told him the witness knew it was the defendant he saw near the smokehouse with the bundles on the Saturday night in question. That withdrawal of improper testimony when of an immaterial nature will not be cause for a reversal, has been frequently decided by · this court, but when the testimony is of a material nature, its withdrawal will not cure the error, and especially as the court in his charge did not instruct the jury to disregard the comments of the district attorney objected to at the time. In a case wherein improper evidence had been admitted this court says, in Clements v. State, 61 Texas Crim. Rep., 161, 134 S. W. Rep., 729:

"The court, however, in the charge to the jury withdrew from their consideration this evidence. It was said in Darnell v. State, 126 S. W., 1122: 'The State had used this testimony both before the jury and in the argument of the case as the most damaging testimony against appellant attacking his theory of self-defense.' It was further said in the Darnell case: 'We are of opinion that the withdrawal of it from the jury, under the circumstances, did not cure the error.' Quite a number of cases are cited in the Darnell case in support of the ruling. In McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W., 672, it was held that the admission of evidence of a material character calculated to influence the jury is not cured by subsequent withdrawal from their consideration. And in Henard v. State, 46 Texas Crim. Rep., 90, 79 S. W., 810, this language was used: 'But it is said that the error of the court in admitting this testimony is cured by the subsequent exclusion thereof and withdrawal by the court of said testimony from the consideration of the jury. This question has been before the courts of this State in a number of cases. See Railway v. Levy, 59 Texas, 542, 46 Am. Rep., 269; Miller v. State, 31 Texas Crim. Rep., 609, 21 S. W., 925, 37 Am. St. Rep., 836. We think the true rule on this subject to be: If the testimony is not of a very material character, it may be withdrawn by the court, and the error thus cured; but if, on the contrary, the evidence was of a material character, and was calculated to influence or affect the jury, the withdrawal of the same from their

consideration would not heal the vice of its admission.'" This is the rule of this court, especially in those cases where the testimony showing guilt is weak, as in this case.

The fact that the defendant was a county convict and had been hired out on bond, would not render inadmissible any statements he might make.

For the error herein pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*