# CHARLESTON.

## STATE *v.* FLOYD CONWAY.

Submitted October 30, 1923. Decided November 6, 1923.

CRIMINAL LAW—*State Cannot Attack Character of Accused, Unless First Put in Issue by Him.*

The State cannot, on the trial of a criminal case, introduce evidence of defendant's bad character when he has not, by evidence before the jury, put his character in issue.

Error to Circuit Court, Fayette County.

Floyd Conway was convicted of owning, operating, and maintaining, possessing, and having an interest in a moonshine still, and he brings error.

*Reversed and remanded.*

*C. R. Summerfield,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Denns Steed,* Assistant Attorney General, and *W. G. Brown, State Prohibition Commissioner,* for the State.

LITZ, JUDGE:

The defendant was sentenced to two years confinement in the penitentiary at hard labor by judgment of the circuit court of Fayette county, rendered October 14th, 1922, upon the verdict of a jury finding him guilty under an indictment for owning, operating, maintaining, possessing and having an interest in a ''moonshine still''; and from that judgment and sentence defendant brings error.

It appears from the evidence of the State that on or about the 19th day of June, 1922, S. L. Neal, a constable of Fayette county, accompanied by one Wilbur Adkins, within or near a laurel patch at the head of a rough, steep hollow in that county, discovered a fifty gallon barrel containing ''mash,'' composed of water and a quantity of cracked corn estimated as being from one peck to a bushel. An empty barrel was near or over the barrel containing the mash, and a boiler and top, within a few feet away, was partly or entirely concealed by leaves and other substances. An improvised furnace, with some evidence of use, was also close by. A cup or can hung on a bush within reach of the fermenting concoction. They found no worm or other parts which, with the boiler and top, would constitute a complete apparatus for distilling liquors; nor did they see any other person in the vicinity either at this time or on their second visit the following day.

Neal, in company with William Holstein, a deputy sheriff of Fayette county, returned to the scene on the morning of the third day, and after waiting a short while observed the defendant and Loam McCallister, who was indicted and tried jointly with the defendant Conway, approaching. Before Conway and McCallister reached the mash barrel, they were arrested by the officers, Neal and Holstein.

Neal, describing the situation at the time of the arrest, says:

''We were hid in above the barrel of mash, ten or twelve feet away. We heard somebody coming up the hollow, finally we caught sight of two parties. We fell back behind the rock we were on at the time they came up to a drain before you get to the mash, between the mash and the creek,

and they looked around there as though they were looking for tracks. One of them, I don't know which, said they didn't see anything of any tracks. There was a can hanging on a bush. Mr. Conway says, 'It hasn't been moved,' he was talking about the can. 'It is just as we left it.' At that time we called on them to put them up.''

The evidence in behalf of Conway and his co-defendant, McCallister, shows that Conway, having found and drunk from the mash a day or two previously, reported his discovery to several persons in the community including McCallister; and that he and McCallister were going for a drink of it when arrested. Both defendants deny that they had any interest in or connection with the mash or any of the other articles found.

The defendant McCallister introduced evidence showing his reputation as being law-abiding, which was unchallenged by the State.

Defendant Conway offered to show a like reputation by two witnesses, but this testimony was excluded by the court on the ground that the witnesses were not sufficiently informed to speak; so that no evidence remained putting his character in issue. The State, however, in rebuttal, over this defendant's objection, proved that he had been sentenced to the penitentiary of West Virginia in 1902, where he served one year on a conviction under the maiming act; and also showed by other testimony that during the years 1912 and 1913 his reputation as a law-abiding citizen in the community in which he then resided was not good. The jury acquitted McCallister and convicted Conway.

The defendant assigns error to several rulings of the trial court; but relies mainly on the one involving the admission of evidence tendered by the State for the purpose of showing bad character of defendant. This error is palpable and violates one of the most primary principles in the trial of criminal cases. The fact that the defendant offered evidence of his good character, which was excluded from consideration of the jury on the ground that the witnesses were not qualified to speak, did not put his character in issue. The

record stood, with the evidence excluded, as if none had been offered.

Without considering the other assignments, we must conclude that the defendant was seriously prejudiced by such plain violation of his substantial rights; and that for this cause alone the verdict should have been set aside.

The judgment of the circuit court is reversed, verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*