# CHARLESTON.

## STATE *v.* CECIL COLEMAN

Submitted April 30, 1924.  Decided May 29, 1924.

1.  CRIMINAL LAW—*Admission of Evidence That Accused at Time of Crime Serving Life Sentence for Similar Offense Held Prejudicial Error.*

    The admission of evidence upon a trial for murder that the defendant was at the time of the homicide serving a life sentence for murder in the State penitentiary is plainly prejudicial, and constitutes ground for reversal of the judgment of conviction, notwithstanding its subsequent withdrawal from the jury. (p. 546).

2.  HOMICIDE—*Charge That Intent, Malice, and Premeditation Inferable from Crime Held Erroneous.*

    Where the evidence tends to show that the homicide was induced by the use of a vile and opprobrious epithet applied by deceased to accused at the time of the homicide, and evidence is also adduced raising the issue of defendant's

mental irresponsibility, it is error to instruct. the jury that if they believe beyond a reasonable doubt from the evidence that the prisoner was guilty of stabbing with a deadly weapon the deceased, and of killing him, the intent, the malice, and the willfulness and premeditation may be inferred from the act. (p. 548).

3. CRIMINAL LAW—*Evidence of Physical and Mental Examination of Accused During Trial Held Not Violative of Defendant's Constitutional Privilege Not to be Witness Against Himself.*

Where the defense of mental irresponsibility is raised, evidence of facts disclosed by a physical and mental examination of accused by physicians either prior to or during the trial, with or without his consent, does not violate the constitutional privilege of accused not to be a witness against himself. (p. 549).

Error to Circuit Court, Marshall County.

Cecil Coleman was convicted of murder in the first degree, and he brings error.

*Reversed and remanded.*

*C. E. Carrigan, J. Howard Holt* and *Atkinson, Shannon & Life,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant was indicted in the circuit court of Marshall county on May 7, 1923, charged with the murder of Orville Rowsey on April 22d of that year. He was arraigned on May 12th but, as the time of arraignment had not been fixed in advance, his counsel were not present. Thereupon the court appointed a local attorney, who stated that attorneys in Charleston had been retained to appear for defendant. The trial was then set for May 22d. On that day defendant's attorneys from Charleston appeared for the first time in the case, presented an affidavit showing that the attendance of important witnesses could not be secured at that time, and made a motion for continuance in order that defendant might be enabled to make proper defense. This

motion was overruled, defendant was tried, convicted of murder in the first degree, and sentenced to be hanged on September 17, 1923. He prosecutes his writ of error to that judgment.

The homicide occurred on Sunday morning in the State penitentiary at Moundsville where defendant, twenty-three years of age, was confined under a life sentence for murder and deceased, Rowsey, was serving a five year sentence for burglary. The convicts were walking and exercising in the yard of the penitentiary. Four of them, Leonard Fisher, Goldie Adkins, Ralph Maxwell and the deceased Rowsey were standing together engaged in conversation when defendant came up to them and asked Fisher to hold a knife, stating that he had been shooting craps and was afraid the guards would search him. He turned the knife over to Fisher. Shortly thereafter an argument arose between Rowsey and Coleman in which Rowsey twice applied to Coleman the most vile and opprobrious epithet calculated to inflame the human passion, whereupon Coleman immediately grabbed the knife from Fisher's side pocket, cutting Fisher's fingers while doing so, and stabbed Rowsey twice, from the effects of which he died.

The defense offered evidence tending to show that defendant had been mentally deranged since childhood by reason of blows on the head from which fractures were alleged to have resulted. The theory of the defense was that the provocation caused by the insulting language of Rowsey to one of defendant's feeble mental caliber should be considered by the jury in determining whether there was malice, deliberation and premeditation.

Among the numerous errors assigned by counsel for defendant the following will be considered:

(1) That over the objection of defendant the State introduced by its first witness evidence that the defendant Coleman was confined in the State penitentiary for life under sentence from the intermediate court of Kanawha county for the murder of one, Isabel Craig, in October, 1921. Later, on the completion of evidence, the court instructed the jury:

> "The court instructs the jury that the record of a previous conviction and commitment of the defendant

are all stricken from the record and you are not to con-
sider the same as any evidence against the accused ex-
cept in so far as it relates to the custody of the accused
by the warden of the West Virginia penitentiary and
the place where the offense, if any, was committed.''

It was proper for the State to show that the homicide took
place within the State penitentiary, but it was absolutely
unnecessary and unfair to the defendant to show that he was
confined therein under a life sentence for murder. Although
stricken out, this evidence was clearly prejudicial to de-
fendant for the following two reasons:

(a)    Defendant did not go upon the witness stand and
his character was not in issue. The general rule is that on a
prosecution for a particular crime evidence which in any
manner shows or tends to show that the accused has com-
mitted another crime wholly independent of that for which
he is on trial, even though it is a crime of the same sort, is
illegal and inadmissible. 16 C. J. 586. ''Proof of other
homicides or crimes having no connection with the one for
which the defendant is on trial is irrelevant and inadmissible.
Until the defendant's character is put in issue it cannot be
attacked.'' *State* v. *Sheppard,* 49 W. Va. 582, 39 S. E. 676;
*State* v. *Lane,* 44 W. Va. 730, 29 S. E. 1020; *State* v. *Donohoo,*
22 W. Va. 761; *Watts* v. *State,* 5 W. Va. 532; *Cole* v. *Common-
wealth,* 5 Gratt. (46 Va.) 696; *Walker* v. *Commonwealth,* 1
Leigh (32 Va.) 574; *State* v. *Conway,* (W. Va.) 120 S. E.
78.

(b)    Testimony plainly erroneous and prejudicial to an
accused on trial, although stricken from the consideration
of the jury, may be of such character and so adversely af-
fect the defendant as to constitute ground for reversal of the
judgment. *State* v. *Matsinger,* (Mo.) 180 S. W. 856; *State*
v. *Martin,* 229 Mo. 620, 129 S. W. 881; Ann. Cas. 1912-A.
908; *Bank* v. *Goos,* 39 Neb. 437, 58 N. W. 84, 23 L. R. A. 190;
*Andrews* v. *State,* 64 Tex. Crim. 2, 141 S. W. 220, 42 L. R.
A. (N. S.) 747; *Phillips v. Thomas,* 70 Wash. 533, 127 Pac. 97,
42 L. R. A. (N. S.) 582; *State* v. *Morris and Johnson,* decided
this term. In *State* v. *Hill,* 52 W. Va. 296, the court said:

''The general rule is that if improper evidence has

been given to a jury, and is afterwards withdrawn by the court from the consideration of the jury, that cures any error committed by its introduction; but there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission and then the error will call for a new trial.''

A case involving the introduction of evidence more plainly erroneous and intensely prejudicial to the accused can scarcely be conceived. The jury were not only informed that the defendant was guilty of previously murdering a woman, but that he was serving a life sentence for that crime. The natural inference is that the jury concluded that there was no way of punishing defendant except by inflicting upon him the death penalty. The admission of this evidence was reversible error.

(2)   The court over defendant's objection gave the jury the following instruction:

''The court instructs the jury that to convict one of murder it is not necessary that malice should exist in the heart of the accused against the deceased. If the jury believe beyond a reasonable doubt from the evidence that the prisoner was guilty of stabbing, with a deadly weapon, the deceased, and of killing him, the intent, the malice, and the willfulness and premeditation may be inferred from the act and such malice may not be directed against any particular person, but such as shows a heart regardless of social duty fatally bent on mischief.''

This instruction is based upon one given in the case of *State* v. *Welch*, 36 W. Va. 690-697, 15 S. E. 419, which was criticized by Judge BRANNON. There were no eye-witnesses to the homicide in that case, but the evidence showed that the deceased, wife of the accused, had been brutally murdered in bed, being struck numerous blows on the head with a fire brick.

However in the instant case circumstances were shown tending to rebut a presumption of premeditation and deliberation, essential elements of first degree murder, from the

bare fact of the stabbing of deceased with a deadly weapon. We feel that the instruction states an abstract doctrine, ignoring the evidence in the case, and should not have been given. *State* v. *Best,* 91 W. Va. 559, 113 S. E. 919. A similar instruction is held improper in the case of *State* v. *Whitt,* decided this term.

(3)   Defendant complains of the evidence of Dr. C. H. Clovis, to whose office in Wheeling the defendant was brought, handcuffed, several days before the trial by the prosecuting attorney and several officers from the penitentiary, without notice to his attorneys, and without his consent. The doctor made an X-ray examination of defendant's skull and at the trial testified that he found no definite evidence of any fracture of the skull, in rebuttal to defendant's evidence. Defendant contends that such evidence was not proper for the reason that such examination, without his consent violated his constitutional right not to be compelled to give evidence against himself.

Ordinarily the result of a physical examination made without consent of the accused is not admissible in evidence, but we find the weight of authority in this country is to the effect that where the defense of insanity is made, evidence of the facts disclosed by a physical and mental examination of accused by physicians either prior to or during the trial, with or without his consent, does not violate the constitutional privilege of accused not to be a witness against himself. It is further held that neither does such examination violate the confidential relation of physician and patient. 1 Greenleaf on Evidence, 16th Ed., p. 616, sec. 469-E; *State* v. *Church,* 199 Mo. 605, 98 S. W. 16; *State* v. *Petty,* 32 Nevada, 384, 108 Pac. 934; *Gordon* v. *State,* 68 Ga. 814; *Commonwealth* v. *Buccieri,* 153 Pa. 550, 26 Atl. 228; *State* v. *Austin,* 199 N. Y. 446, 93 N. E. 57; *People* v. *Schuyler,* 106 N. Y. 298, 12 N. E. 783; *State* v. *Furlong,* 187 N. Y. 198, 79 N. E. 978; *People* v. *Truck,* 170 N. Y. 203, 63 N. E. 281; *State* v. *Spangler,* 92 Wash. 636, 159 Pac. 810; *People* v. *Kemmler,* 199 N. Y. 580; 16 C. J. p. 568.

In view of these authorities, we feel that this evidence was properly admitted.

Defendant assigns as additional error the overruling of

his motion for a continuance. Because of our decision to reverse the case for the reasons above given, it is unnecessary to pass upon this and other assignments of error. The judgment of the lower court will be reversed and defendant granted a new trial.

*Reversed and remanded.*