GREEN *v.* STATE.

4698                                        259 S. W. 2d 142

Opinion delivered June 22, 1953.

*Walter L. Brown,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

ROBINSON, Justice.    Appellant was convicted of murder in the first degree and sentenced to death.    The crime was alleged to have been committed on December 8, 1951.    A felony information was filed on December 10, and on the same day the court appointed attorneys to represent the defendant and issued an order directing that he be committed to the State Hospital for Nervous Diseases for a period of 30 days for a mental examination.    On January 15, 1952, the prosecuting attorney filed with the court a petition stating that the defendant had been examined at the State Hospital and it was found that he was suffering with ''psychosis with cerebral arteriosclerosis with paranoid trend.''    The petition asked that the court order the defendant's return to Ouachita County and that the court appoint a commission to make a further study and examination as to the sanity or insanity of the defendant.

On January 22, there was filed in open court a report from the State Hospital as follows: ''We have completed our examinations in the case of R. H. Green,

who was admitted to the State Hospital under Act No. 3 from Ouachita County, Arkansas, and we hereby certify that the following is a true and correct report of our findings in this case:

"DIAGNOSIS: Psychosis with cerebral arteriosclerosis with paranoid trend.

"1. It is the opinion of the examining staff that R. H. Green was mentally incompetent and not responsible for his acts at the time of their alleged commission.

"2. It is further the opinion of the examining staff that R. H. Green is mentally incompetent and not responsible at the time of this mental examination.

"3. It is therefore the recommendation of the examining staff that the charges against R. H. Green be dismissed and that he be committed to the State Hospital under Act 241 of the 1943 Legislature for the treatment of his mental condition."

The Court, acting on the petition of the prosecuting attorney, appointed Drs. R. B. Robins, James Guthrie, and Perry Dalton, as commissioners to make an additional examination of the defendant to ascertain his mental condition and report to the court. The commissioners were authorized to secure the services of any alienist desired to assist in the examination and were directed to file their report with the court along with that of any alienist selected. On the same day defendant by his attorneys filed a motion to set aside the order appointing the commission. On January 30, 1952, the court overruled defendant's motion to set aside the appointment and ordered the commission to employ Dr. Louis Cohen of Little Rock to also make an examination; ordered the defendant held in county jail in Ouachita County for a period of a week for examination by the commission and that he then be returned to Little Rock and placed in the State Hospital for Nervous Diseases, and ordered Dr. Cohen to make all and any daily examinations necessary; and directed that the defendant be returned to the sheriff of Ouachita County at the completion of all examinations. On March 21, on mo-

tion of the prosecuting attorney, the court issued an order in which it was set out that the commission and Dr. Cohen had completed their consultations with the finding that in their opinion the defendant was sane and without psychosis, and ordered him returned to the custody of the sheriff of Ouachita County.

On April 2, 1952, the cause came on for trial. Defendant interposed the defense of insanity. Dr. Robins, one of the commissioners appointed by the court, and Dr. Louis A. Cohen whose employment was authorized by the court, testified that the defendant was sane and without psychosis.

The defendant made no objection to the order committing him to the State Hospital for a mental examination in the first instance; but by motion to set aside the order, he objected to the appointment of a commission to examine him and the order authorizing the employment of an alienist.

Initiated Act No. 3 of 1936, Ark. Stats., § 43-1301, and also Act No. 256 of 1949, Ark. Stats., § 43-1304, authorize the trial court to commit a defendant to the State Hospital for a mental examination for a period not exceeding 30 days. The statutes also provide: "the action of the court in committing the defendant for an examination shall not preclude the State or defendant from calling expert witnesses to testify at the trial, and such expert witnesses shall have free access to the defendant for the purposes of observation and examination during the period of his commitment to the State Hospital for examination."

Art. 2, § 8 of the Constitution of the State of Arkansas provides: "nor shall any person be compelled, in any criminal case, to be a witness against himself." To the same effect is the 5th Amendment to the Constitution of the United States. There is a line of cases holding that to compel a defendant to submit to a physical examination and then the introduction of evidence as to what the examination revealed does not do violence to the constitutional provision against compelling one to give evidence against himself. *State* v. *Petty*, 32 Nev.

384, 108 Pac. 934; 25 Ann. Cas. 1912D, 223 n.229. See 164 A. L. R. 967 and 25 A. L. R. 2d n.1407. However, the weight of authority appears to be to the contrary. 14 Am. Jur. 879; *State* v. *Height*, 117 Iowa 650, 91 N. W. 935, 59 L. R. A. 437; and notes in 164 A. L. R. 967 and 25 A. L. R. 2d 1407. On the side of the majority is our case of *Bethel and Wallace* v. *State*, 178 Ark. 277, 10 S. W. 2d 370. There the question of insanity was not involved, and it was held that the testimony of a doctor who made a physical examination of the defendant in jail at the request of the sheriff was inadmissible as to the physical condition of the defendant because such testimony would be in violation of the 5th Amendment to the Constitution of the United States and Art. 2, § 8 of the Constitution of Arkansas.

But in some states, including Arkansas, holding that evidence of the findings of a physical examination made under compulsion is not admissible, there is an exception as to a mental examination made for the purpose of determining the sanity or insanity of the defendant. *State* v. *Coleman*, 96 W. Va. 544, 123 S. E. 580. In *Clements* v. *State*, 213 Ark. 460, 210 S. W. 2d 912, it was held that where one had been committed to the State Hospital for mental examination, the doctors making the examination could testify without violating the defendant's constitutional rights; and in the case at bar defendant does not contend his constitutional rights were violated by sending him to the State Hospital for mental examination. In fact, he made no protest against such procedure even though it was not done on his motion. But the question here is whether the court was in error in appointing a commission to examine the defendant.

The General Assembly has provided for a mental examination of those charged with crime who may be insane or may plead insanity as a defense; but with the exception of a preliminary examination in some instances to determine whether defendant should be sent to the State Hospital for examination, the statutes do not authorize the court to appoint anyone to make an examination. Ark. Stat. 43-1304, 43-1305.

A statute compelling the defendant to submit to a mental examination in order that a psychiatrist may form an opinion as to his sanity, and then permitting the alienist to testify in court detailing the questions and answers upon which he bases his opinion, is on the borderline of the constitutional interdiction against compelling one to testify against himself; and although the statute has been held to be constitutional, *Clements* v. *State, supra,* it should not be stretched, enlarged, or expanded. However, the state and the defendant are authorized to have independent examiners, and the statutes do not prohibit either side from calling as a witness any competent person, expert or otherwise, to testify as to the mental capacity of the defendant. But if the court names the ones to make the examination and that fact is developed by the evidence as was done here, it could appear to the jury that the witnesses are vouched for by the court.

Dr. Robins testified on direct examination: ''Q. I will ask you if you examined him in a capacity in your office, and in what capacity you made your examination at that particular time? A. Well, the judge appointed a panel of 3 of us local physicians to conduct an examination of Mr. Green and to employ any psychiatric help that we might need. . . .'' On direct examination Dr. Cohen testified: ''Q. Did you have the opportunity of examining this particular person, R. H. Green, the defendant in this case? A. I was appointed by the court to perform such examinations, I believe. Q. By the Ouachita County Circuit Court? A. Yes.''

In many instances there are people on the jury serving for the first time. To some of them the whole courtroom procedure is strange and perhaps somewhat confusing; and when a psychiatrist testifies that he was appointed by the court to examine the defendant, a juror could very easily come to the conclusion that the witness' testimony is entitled to greater consideration than if he had been selected by the prosecuting attorney or counsel for the defendant, or named by the statutes. In fact, where the expert's testimony is favorable to the

State, the prosecuting attorney might so argue the weight of the witness' testimony.

For the error of the court in appointing doctors to make an examination, the cause is reversed and remanded for a new trial.

The Chief Justice not participating.