STATE OF WEST VIRGINIA

*v.*

MARK ROY MCCAULEY

(No. 9924)

Submitted April 22, 1947.   Decided July 1, 1947.

*Edward J. Ryan,* and *Shores & Shores,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, and *J. Chandler Curd,* Assistant Attorney General, for defendant in error.

LOVINS, JUDGE:

Mark Roy McCauley was indicted, tried and convicted in the Circuit Court of Mineral County for the murder of Joseph Horne, a sergeant in the Department of Public Safety of the State of West Virginia. To a judgment sentencing him to be executed, he prosecutes this writ of error.

The theft of a motor truck, owned by Dodd & Archer and worth approximately sixty-five hundred dollars, was reported to deceased for his official action. On September

9, 1946, having been informed that defendant had taken the truck to the vicinity of Emoryville, Sergeant Horne, accompanied by the Sheriff of Tucker County and the sheriff's son, went to that town, where they found the truck parked near the home of Jim Harding, with the name of the owners removed by scraping and burning. The engine serial number and trade-mark of the vehicle were also removed and an attempt had been made to repaint the truck body.

The officers stopped at the home of Harding, and were there informed that defendant had gone in Harding's automobile to Keyser, West Virginia, and that his return was expected within a short time. Deceased, leaving the sheriff and his son at the Harding home, proceeded to a point near Keyser, where he encountered defendant, and according to defendant's statement, hereinafter mentioned, arrested him, but did not search defendant's person. Defendant and the deceased returned to the Harding home and, on their arrival there, proceeded to the rear of the house. About the time they entered the kitchen of the Harding home, Horne requested defendant to give him the keys to the motor truck, whereupon an altercation ensued, during which defendant shot the officer twice, and also shot the sheriff. Defendant then went upstairs in the Harding home, secured a shotgun, fired upon and wounded the son of the sheriff. The deaths of Horne and the sheriff occurred shortly after the shooting.

Defendant fled to the woods, and about nine-thirty p. m., on September 10, 1946, he was apprehended near the Harding home by two members of a posse. At the time he was apprehended, he was carrying a pistol, a shotgun, both of which he was forced to discard, and a bundle in which were various articles for personal use, together with a license plate which had been attached to the motor truck. Defendant was taken to Clarksburg by the officers having his custody, where he made a statement in which he admitted the killing of the two officers and the wounding of the sheriff's son. Defendant's statement is to the effect that when Horne asked him for the keys to the motor

truck, defendant asked the sheriff if he had a warrant for his arrest. The sheriff answered by stating that no warrant was necessary. Defendant further stated that he felt the officers were infringing upon his rights; that he was angry; and that they did not know the whole truth about the theft of the truck. At this time, according to the statement, Horne started to search defendant's pockets for the keys, and, in doing so, ascertained that defendant was carrying a revolver. Whereupon defendant drew the pistol and shot Horne twice. The sheriff attempted to use his revolver, but was shot by defendant before he could do so.

The testimony of the only eyewitness to the shooting is to the effect that as defendant and deceased came in the door of the kitchen, Horne grabbed defendant by the arm, and asked him if he had the keys to the truck in his pocket. A struggle ensued, during which defendant reached for his gun. At this point the witness fled from the room and, as she ran outside the door, she heard the shots.

At the trial the State proved by medical testimony that Horne's death was caused by the gunshot wounds inflicted on him. The circumstances under which defendant was apprehended were shown and there was testimony to the effect that one of the bullets found in the body of deceased had been fired from the revolver discarded by defendant at the time of his apprehension. It was further testified that prior to the shooting, defendant had threatened to kill Horne.

Although the killing was admitted, defendant entered a plea of not guilty and only offered, in support of his plea, evidence to the effect that he was insane at the time of the killing. Defendant's father, brother, former wife, aunts and sisters testified that defendant was heedless of the rights of others; that he possessed an over-bearing disposition; and that, in many instances, he would act without regard as to whether his action was right or wrong. One sister attempted to testify concerning an incident involving an attack made on her by a larger boy, when defend-

ant was a child of nine years; and that defendant had attempted to defend her but could not because he was overpowered by the larger boy. The trial court refused to admit such testimony.

Two psychiatrists were introduced in behalf of defendant, one of whom stated that from his examination of defendant and from hearing the testimony adduced in open court, he was of the opinion that defendant did not know the difference between right and wrong. The other psychiatrist was of opinion that he knew the difference between right and wrong, his conception in that respect being equivalent to that of a child eleven or twelve years old, but that he was heedless of the consequences of carrying out any undertaking he wished to accomplish.

In rebuttal the State offered the testimony of a number of lay witnesses, some of whom had engaged in business transactions with defendant. These witnesses testified that they had known defendant for various periods of time; that they had observed his conduct; and that they had not observed anything to indicate that defendant was mentally unsound. Another psychiatrist, testifying in behalf of the State, stated that, after having examined defendant for a period of about an hour and forty-five minutes, and after having heard the evidence previously introduced by the State and the defense, he was of opinion that defendant "has sufficient intelligence and judgment to tell the difference between right and wrong," even though his mentality and judgment are subnormal.

On the foregoing evidence the jury returned a verdict of murder of the first degree, and, after overruling a motion to set the verdict aside, the trial court sentenced defendant to be hanged.

Assignments of error are classified as: (1) those relating to the action of the trial court in admitting and rejecting evidence; (2) alleged prejudicial conduct on the part of the prosecuting attorney and counsel assisting in the prosecution; (3) giving, refusing and modifying instruc-

tions; (4) refusing to permit counsel to argue to the jury that the attempted arrest made by deceased was illegal; and (5) in refusing to set aside the verdict as being contrary to the law and the evidence.

Another assignment of error was predicated on the refusal of the trial court to set aside the verdict on the grounds of after-discovered evidence. But before the case was submitted for decision by this Court, it was ascertained that such evidence did not exist, and that ground was abandoned in argument and brief.

The Court rejected the testimony of defendant's sister relative to the incident hereinbefore noted with respect to defendant's efforts to defend her when he was about nine years of age. The alleged theory of defendant in offering this testimony was an effort to show that such incident resulted in defendant having "frustrated ideas." If defendant had suffered in his childhood an incident or some experience which had impaired or destroyed his reason, the testimony may have been pertinent on the issue of sanity here presented. But no attempt was made then, or at any other time during the trial, to connect the childhood occurrence with his mental condition at the time of the killing. As far as the record discloses this was an isolated incident, taking place during defendant's childhood, and the trial court ruled that it was irrelevant. A trial court is vested with considerable discretion as to the admissibility of testimony on the issue of sanity in a homicide trial, and, in the absence of clear abuse, that discretion will not be interfered with on review. 26 Am. Jur., Homicide, Section 338. It was not error to reject the proffered testimony.

Defendant argues that the court erred in permitting counsel for the State to interrogate one of the psychiatrists testifying for defendant as follows: "You never suggested to Mr. Ryan, or anybody, that they inquire of any authority of this State to have him examined, did you?" Defendant assumes the position that this question was asked for the purpose of inflaming the jury against him.

It is difficult to see how such a question would engender any feeling in the minds of the jurors, either for or against defendant. True, the question was irrelevant, but the answer of the witness in the negative did not tend to establish any fact then in issue before the jury, and no prejudice resulted.

It is contended that the trial court committed error in sustaining an objection to questions propounded by defense counsel to one of the psychiatrists testifying for defendant relative to the rejection of defendant as a member of the armed forces of the United States. We have examined the questions asked and the rulings and observations of the court thereon, and readily reach the conclusion that proffer of such evidence was unwarranted, and that the exceptions taken to the action of the court thereon were baseless.

Defendant contends that he was prejudiced by the remarks made by counsel for the State during the progress of the trial, and that his motion for a mistrial should have been sustained.

Counsel assisting in the prosecution propounded the following question: "How would you account for the fact, if he's been so afflicted for the last ten years, he entered the United States Navy and served as a machinist mate for four years, receiving a *dishonorable* discharge, without showing any evidence of this thing?" (Italics supplied). Before the question was answered, counsel for defendant objected and moved for a mistrial, which the trial court overruled. The attorney propounding the question immediately apologized to the court, stated that defendant had received an "honorable" discharge, and asked that the question be propounded with the words "honorable discharge." The record does not disclose that defendant's counsel moved the court to instruct the jury not to consider the remark. Moreover, it would be a useless act for a court to direct a jury to disregard a remark which is immediately withdrawn and disavowed by counsel who made it. We are cited to the case of *State* v. *Graham,* 119

W. Va. 85, 191 S. E. 884. The prosecuting attorney in the *Graham* case persisted in improper remarks to such extent that this Court held that the accused was deprived of a fair and impartial trial by such conduct. In this case no such situation is presented. The misstatement, inadvertently made, immediately repudiated, followed by an apology, was not a ground for declaring a mistrial, and no prejudice resulted from such incident.

We are also cited to the case of *State v. Coleman,* 96 W. Va. 544, 123 S. E. 580; *State v. Sheppard,* 49 W. Va. 582, 39 S. E. 676; *State v. Lane,* 44 W. Va. 730, 29 S. E. 1020; and *State v. Donohoo,* 22 W. Va. 761, for the principle that defendant's character cannot be attacked until the same is placed in issue by him. Defendant's character had not been placed in issue here, nor do we think there was any attack made on his character by the inadvertent use of the word "dishonorable."

During the course of the trial an attorney was summoned to testify in behalf of the State in rebuttal, it evidently being the purpose of the State to show that defendant had attempted to employ the attorney as his counsel to defend him in this trial, and to reason from that action of defendant that he had sufficient intelligence to know the consequences of his act in killing deceased. We have examined meticulously the record and find that the attorney testified that defendant attempted to employ him as his counsel; that defendant had written two letters to the witness and, when the attorney was asked to produce the letters, he claimed his privilege as a practicing attorney. The court sustained an objection to the introduction of the letters. A colloquy ensued between the prosecuting attorney and one of counsel for defendant, at which time counsel for defendant moved the court to declare a mistrial. We see nothing in the testimony of this witness, nor in the colloquy between counsel which was improper. Defendant in his brief makes vague reference to matters which do not appear in the record. We do not consider matters *de hors* the record. *Paris v. Brown* (Va.), 129 S. E. 678; *Hartman v. Corpening,* 116 W. Va. 31, 178 S. E. 430.

The State tendered and the trial court gave, over defendant's objections, eleven instructions. Defendant contends that it was error to give these instructions on the general grounds that they are abstract, misleading, ignore the defense of insanity interposed by defendant, and that the evidence showed that the killing was done in the heat of passion.

Instruction No. 3, given at the request of the State, is as follows: "The Court instructs the jury, that if they believe from the evidence beyond a reasonable doubt that Mark Roy McCauley wilfully, deliberately, maliciously and premeditatedly shot and killed Joseph P. Horne, he is guilty of murder in the first degree and the jury should so find." This instruction is objected to on the grounds that it ignores the defense of insanity, and that the evidence shows the killing was done in the heat of passion over the illegal arrest.

It is true that if a binding instruction is given, the factual premises stated therein must be complete and, if given at the request of the State, a good defense supported by evidence and relied on by defendant, must not be ignored. *State* v. *Price,* 83 W. Va. 71, 97 S. E. 582; *State* v. *Wisman,* 93 W. Va. 183, 198, 116 S. E. 698. See *Evans* v. *Kirson,* 88 W. Va. 343, 351, 106 S. E. 647. Treating instruction No. 3 as binding, before the jury could find defendant guilty of first degree murder, they were required to believe beyond a reasonable doubt that defendant had sufficient mental capacity to, and did, deliberate and premeditate on his act; will its commission; and entertain malice toward the deceased. In commenting on an instruction almost identical with instruction No. 3, here considered, this Court has said: "The words * * * 'wilfully, deliberately and premeditatedly, negative the idea of mental incapacity on the part of the defendant at the time of the alleged offense." *State* v. *Corey,* 114 W. Va. 118, 125, 171 S. E. 114. This instruction, properly considered and analyzed, even though a binding instruction, does not ignore the defense of insanity. We must assume that the jury was composed of

men endowed with an ordinary faculty for reasoning and an average knowledge of the plain meaning of the words used; and that they understood that, if insane, defendant could not have willed, deliberated, or premeditated as to the killing, nor could he have entertained malice against the deceased. Moreover, instructions numbered 7, 8 and 9, tendered by the State and given, and instructions A, F and G, tendered by defendant and given, when read together tend to elaborate the meaning of the words used in instruction No. 3 and fully instruct the jury on the defense of insanity.

Instruction No. 3 substantially follows the definition of murder of the first degree as set forth in Code, 61-2-1, and the decided cases thereon, and correctly informed the jury with reference thereto. It was not incomplete, nor was it abstract and misleading. The action of the court in giving that instruction does not constitute error.

All of the other instructions given at the request of the State have been carefully examined, and the arguments in support of defendant's contentions have been fully considered. The instructions state propositions of law, which have been approved by this Court. Such instructions do not ignore the defense of insanity, nor do they overstress any part of the evidence. Although one or more of the instructions may state abstract propositions of law, when considered as a whole, we do not think that the giving of any of said instructions constitutes prejudicial error calling for reversal of this judgment.

However, commenting on instruction No. 10, given at the request of the State, it may be argued that a similar instruction permitting a jury to infer intent, malice, wilfulness and premeditation from the fact that the killing was done with a deadly weapon, was disapproved in the case of *State* v. *Coleman,* 96 W. Va. 544, 548, 123 S. E. 580. Therein it was stated: "* * * in the instant case circumstances were shown tending to rebut a presumption of premeditation and deliberation, essential elements of first degree murder, from the bare facts of the stabbing of deceased

with a deadly weapon. We feel that the instruction states an abstract doctrine, ignoring the evidence in the case, and should not have been given." See *State* v. *Donahue*, 79 W. Va. 260, 263, 90 S. E. 834. But in the instant case no evidence is offered in rebuttal of the circumstances of this killing. There was little or no provocation for the defendant's act, and evidence of insanity only was offered in justification thereof. The giving of instruction No. 10 did not constitute reversible error.

Defendant complains of the action of the trial court in modifying and giving as modified instruction A, reading as follows:

> "The court instructs the jury that to constitute murder in the first degree the evidence must clearly and distinctly prove, beyond any reasonable doubt, that the prisoner was not only incited to the killing of the deceased by malice, and desperate wickedness of heart, but such killing must have been a wilful, deliberate, and premeditated act on the part of the prisoner; in other words, at the time of the killing the prisoner must have distinctly understood what he willed and intended to do; he must have also reflected and deliberated, and premeditated that he would kill the deceased, or do him some serious bodily injury, the probable result of which would be death. And if there be a reasonable doubt whether he had willed and deliberated, and premediated to kill the deceased, or do him some serious bodily injury, which would probably occasion his death, they ought to find him not guilty of murder in the first degree. *The Court further instructs the jury that before any doubt can arise as to wilful, deliberate and premeditated killing by reason of insanity the burden is on the defendant to prove the same to the satisfaction of the jury by a preponderance of the evidence."* (Italics supplied).

The instruction, as originally offered, did not contain the italicized portion above noted.

The instruction, exclusive of the modification, informs the jury of its duty with respect to all reasonable doubts

which might arise in their minds as to the existence of the various elements of the crime of murder of the first degree. The modification, however, applies to such doubt as may arise in the minds of the jurors only by reason of the sanity or insanity of defendant. A different rule applies as to the burden of proof on the issue of sanity of defendant. As to the elements of the crime, each and all must be proved by the State beyond all reasonable doubt, and this instruction exclusive of the modification, so informs the jury. But a plea based on insanity is in the nature of an affirmative defense for the reason that all men are presumed sane. To overcome that presumption, the defendant's insanity must be proved by him to the satisfaction of the jury by a preponderance of the evidence. *State* v. *Robinson,* 20 W. Va. 713; *State* v. *Evans,* 94 W. Va. 47, 117 S. E. 885. For a full discussion of the rule adopted by this and other courts regarding the burden of proof as it relates to a plea of insanity, see *State* v. *Cook,* 69 W. Va. 717, 724, *et seq.,* 72 S. E. 1025. The modification of instruction A merely points out this distinction, and correctly informs the jury with respect thereto. Since it correctly states the law, as applicable to the evidence in the case, we are unable to see wherein the jury was, or could have been, misled thereby. It was not reversible error to give that instruction, as modified.

Defendant tendered instructions C and D. The principles stated in those instructions are almost identical. By them the jury was instructed that if they believed the killing was done with malice, but not wilfully, deliberately, and premeditatedly, defendant was guilty of murder of the second degree. These instructions were covered by instruction B, which was given and defined the essential elements of murder of the first degree, and by instruction H, also given, which instructed the jury that one of five verdicts could be returned: murder of the first degree, murder of the second degree, voluntary manslaughter, involuntary manslaughter and not guilty. Instruction H defined the above noted offenses, and instructed the jury as to the punishment authorized for each offense.

Moreover, in view of the fact that no evidence was offered by defendant in support of his plea of not guilty, except that pertaining to insanity, we do not think that instructions C and D were supported by any evidence. If defendant "with a deadly weapon in his possession without any or upon very slight provocation gives to another a mortal wound, the prisoner is *prima facie* guilty of wilful, deliberate and premediated killing, and the necessity rests upon him of showing extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the State, he is guilty of murder of the first degree." *State* v. *Cain,* 20 W. Va. 678, 681.

There is no conflict between the legal principle stated in the *Cain* case and Code, 61-2-1. The *prima facie* presumption of murder of the first degree, as stated in the *Cain* case, rests upon facts established by proof. The statutory provision that, with certain exceptions, "All other murder is murder of the second degree" applies to cases wherein the facts are not completely proved. *Thomas* v. *Commonwealth* (Va.), 41 S. E. 2d 476, 479. In this case the State had gone forward with the proof and established the fact of the killing; that little or no provocation therefor existed; and from such proof a presumption arises that it was murder of the first degree. The only extenuating circumstance attempted to be proved by the defendant was that he was insane.

Instruction E, tendered by defendant and refused by the court, is fully covered by instruction G, tendered by him and read to the jury.

Defendant tendered his instruction O, which would have told the jury that deceased and the sheriff had no right to arrest or attempt to arrest defendant without a warrant, unless defendant had committed a felony or had committed some offense less than a felony in the presence of the deceased and the sheriff; and further told the jury that a person had the right to resist such arrest and repel force with force if he believed himself to be in danger of great

harm or injury from the arresting officer or officers, and believed and had reasonable grounds to believe that it was necessary to save his own life or person from great bodily harm that the killing of the officer or officers would be justified. This instruction does not state the law. Sergeant Horne, as a member of the Department of Public Safety, was empowered and, indeed, required to "* * * exercise all of the powers conferred by law upon a sheriff, constable or any other peace officer of this state * * *." Code, 15-2-11, as amended. As such peace officer, he could arrest a person without a warrant if he had reasonable cause to believe that such person had committed a felony, even though the felony was not committed in his presence, or even if it develops that no felony had been actually perpetrated. *State* v. *Spangler*, 120 W. Va. 72, 197 S. E. 360. See *Allen* v. *Lopinsky*, 81 W. Va. 13, 94 S. E. 369; *State* v. *Lutz*, 85 W. Va. 330, 101 S. E. 434. An informative discussion of the subject of arrest without a warrant will be found in 48 W. Va. Law Quarterly, 207.

Another vice in instruction O, is that it tells the jury that, in case of an illegal arrest, force may be repelled with force, if the person who is to be arrested believes himself to be in imminent danger of great bodily harm and injury from the arresting officer or officers, and if he has reasonable grounds to believe that it was necessary to save his own life, he may kill the officer or officers. As previously stated, defendant, according to his own statement, had been placed under arrest some time before the killing and at a point approximately fifteen miles distant from the Harding home. The record does not disclose the details of the actual arrest.

At the time of the killing, as we view this record, defendant was then in lawful custody of the deceased officer. By his own statement, he attempted to free himself from that custody. But even if we consider the killing as having taken place while defendant was being illegally arrested, the rule with reference to the force he could use is stated as follows: "In exercising one's right to resist an

illegal arrest he has no right, in order to retain or regain his liberty, to take the life of the officer, unless he has reason to believe and does believe he is in imminent danger, and that it is necessary to do so in order to save his own life, or to save himself from some great bodily harm; and an instruction purporting to define such right, which omits to so state the law to the jury is erroneous." Pt. 17, syl., *State* v. *Clark*, 64 W. Va. 625, 63 S. E. 402. See *State* v. *Holmes*, 125 W. Va. 97, 23 S. E. 2d 61; *State* v. *Lutz, supra; State* v. *Gum*, 68 W. Va. 105, 69 S. E. 463. We have found no authority in this jurisdiction distinguishing between the rights of a person resisting illegal arrest and a person attempting to escape from illegal custody. Viewing that phase of this case in either aspect, defendant used excessive force in resisting arrest or attempting to escape from custody. The evidence fails to establish that accused was in danger of losing his life or of suffering great bodily harm at the hands of deceased. It is to be presumed that deceased, being an officer, would do his duty and would not have wantonly or needlessly wounded or killed defendant. Accordingly, the refusal of the trial court to give instruction O does not constitute error.

Closely connected with the refusal of defendant's instruction O is the denial by the court of permission to defendant's counsel to argue to the jury that the arrest was illegal. We have found nothing in this record to indicate that deceased was attempting to make an illegal arrest. He was informed of the theft of the truck; he found the truck at a point where defendant was staying; he asked defendant for the keys and thereupon defendant engaged in an altercation with deceased and killed him. Later the license, which had been on the truck, was found in the possession of defendant. Furthermore, the attempt on the part of some person to destroy the means of identifying the truck strongly indicated that the truck had been stolen. With these facts in mind, counsel should not have been permitted to argue to the jury that deceased was killed while attempting to make an illegal arrest. In the circumstances of this case the arrest of defendant by de-

ceased was fully justified, and defendant, if innocent of the theft, could easily have shown his innocence. But when the keys were demanded, rather than admit the incriminating fact of their possession, defendant killed the arresting officer. Although counsel should be allowed wide latitude in argument, we do not think that they should be given the unlimited right to make an argument to the jury which is not supported by the evidence nor authorized by law. We see no error in the refusal of the court to permit the argument to be made.

The last assignment of error relates to the sufficiency of the evidence under which defendant was convicted, and the law applicable thereto. We reiterate that the only evidence offered in support of the plea of not guilty was to the effect that defendant was insane. There was a substantial conflict in the testimony of the lay and professional witnesses introduced by defendant and the State on that phase of the case. The jury resolved that conflict against defendant, and found that he possessed sufficient mental capacity to know right from wrong, and to understand the consequences of his act in killing deceased. *State* v. *Beckner,* 118 W. Va. 430, 436, *et seq.,* 190 S. E. 693. See *State* v. *Fugate,* 103 W. Va. 653, 138 S. E. 318; *State* v. *Evans,* 94 W. Va. 47, 117 S. E. 885. The verdict is supported by the evidence.

The facts of this case render applicable the well known principle of law that although homicide is presumed to be murder of the second degree, as hereinbefore indicated, the killing of Sergeant Horne was done upon little or no provocation, which fact is fully established by the evidence of the State, and is not controverted by the evidence of defendant, if he was sane at the time of the killing. The State having established the facts and circumstances surrounding the killing, and the issue of defendant's sanity being resolved against him, the verdict and judgment are without prejudicial error.

Consonant with what we deem our duty with respect to cases involving capital punishment, we have been careful

to consider in detail every aspect of the trial given defendant. In doing so, we have noted certain actions of the court which are technically or procedurally irregular and but for which the trial would have been more perfectly handled. For instance, we believe certain of the instructions could have been worded in a more desirable manner. But in the stress of a trial, it is understandable that imperfections were not then perceived. It was not a perfect trial. But our Constitution only affords to an accused in any criminal case a fair trial. Defendant received a fair trial. We consider as particularly appropriate to the case at bar the comments of this Court in *State* v. *Corey,* 114 W. Va. 118, 128, 171 S. E. 114:

> "It would be very unusual for a trial of the duration of this one to be carried through without error. Perfect trials are rare, if they ever occur. Upholding convictions does not depend upon the perfection of jury trials. It is not the province of courts of review to dissect records of trials for the purpose of determining whether there was any departure from technically correct procedure. An appellate court does not reverse for error in a trial unless it is reasonably evident that a party to the trial was prejudiced by reason of such error. Upon review of a state case, the appellate court's problem is to determine whether the convicted person has probably been prejudicially affected by error in the trial. If there seems to have been no prejudice, the conviction must stand. Where, in a criminal case, under the whole evidence, the jury could not properly have returned any other verdict than that which it did return convicting the accused, errors not plainly prejudicial will be deemed inconsequential. *State* v. *Rush,* 108 W. Va. 254, 150 S. E. 740; *State* v. *Dephenbaugh,* 106 W. Va. 289, 145 S. E. 634. In our opinion, in the case at bar, a verdict carrying a less penalty under our law would not have met the ends of justice and could not properly have been returned by the jury."

The result of this case is unfortunate for the defendant and his family, but he was evidently imbued with the

thought that he would resist the officer at all hazards. He had threatened to shoot deceased, and whether that intention existed at the time he shot and killed him or existed prior thereto, we can see nothing of an exculpatory nature which calls for a reversal of the judgment or that the verdict should be set aside. Therefore, the judgment of the Circuit Court of Mineral County is affirmed.

*Affirmed.*