## Staunton.

HUNTER-SMITH CO., INC. v. GIBSON AND OTHERS.

September 11, 1916.

1. LANDLORD AND TENANT—*Damages—Bursting of Water Pipes.*—A tenant cannot recover damages from his landlord resulting from the freezing and bursting of water pipes, where it appears that the pipes were in good order, the plumbing properly done, and ample stop cocks were provided, and the tenant had exclusive possession and control of them.

Error to a judgment of the Law and Chancery Court of the city of Roanoke, in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Kime, Fox & McNulty,* for the plaintiff in error.

*C. B. & H. M. Moomaw* and *Hoge; Williams & Darnall,* for defendants in error.

HARRISON, J., delivered the opinion of the court.

This action was brough by the Hunter-Smith Company, Inc., to recover of the defendants, Gibson and others, the owners of a three story building in the city of Roanoke, damages alleged to have been caused by the negligence of the defendants in permitting the freezing and bursting of a pipe in the third story of such building.

It appears that on the 28th of February and the 1st of March, 1914, the weather was extremely cold, by reason whereof the water pipe in the third story of the building was frozen, and on the night following the pipe burst and the water ran down through the building to the street floor and upon the goods of the plaintiff. The contention of the plaintiff is that the damage complained of resulted from the defendants' negligence in not having provided the building with modern plumbing and a sufficient number of stop cocks to prevent the building from flooding in the event of bursting pipes.

A careful examination of the record makes it clear that in no view of this case can there be a recovery by the plaintiff. To sustain this conclusion it is not necessary to rely upon the fact shown of record that the defendants have been guilty of no negligence in the premises; nor is it needful to invoke the lease contract, wherein it is provided that the defendants shall in no way be responsible for any damages caused by bursted, choked, or leaking water pipes during the plaintiff's lease, for the reason that the record clearly shows that whatever damage the plaintiff sustained resulted solely from its own negligence in failing to use the means under its exclusive control which had been provided by the defendants for its protection.

The record shows that this building was well constructed and its plumbing in the same condition and repair that it was in when the following acknowledgment touching that matter was made in the lease contract: "It is understood and agreed between the parties to this lease that all the water pipes and all water connections on the premises herein described are in good condition and need no repairs whatever, as is evidenced by the taking possession of said premises

by the party of the second part, and the party of the second part agrees to keep said water pipes in good order and condition at his or her expense during the term of this lease, and to leave the same in good condition when he or she vacates the said premises."

The building in question was supplied with water by a single pipe which ran from the basement, through the building, to the third story which was occupied by the "Knights of the Mystic Chain." There was a cut-off in the street which was under the control of the water company, which company would cut off the water from the building at any time it was requested by any one interested. There was also a stop cock in the basement and one in the store, both of which were in the plaintiff's exclusive possession and control. The use of either of these two stop cocks would have cut the water off from the building and prevented it from rising to the third floor where the freezing and bursting occurred. The second floor was provided with a stop cock, but on the third floor there was none, the evidence showing that it was not customary to put a cut-off in an upper story where a single pipe furnished water to all parts of the building, for the reason that it would have in no way tended to prevent the water from running to the third floor and there freezing and bursting the pipe.

It is obvious that the plaintiff had been provided with ample means to protect its goods from the accident of freezing and bursting pipes by cutting the water off from the entire building; and yet, after dark on a freezing night, without using the means of protection right at hand, or requesting any one else to do so, the store was locked and left by the occupants for the night without any concern whatever.

The plaintiff seeks to excuse itself for not using the means provided for its protection upon the ground that to do so would have cut the water off from the occupants of the upper part of the building. It is not alleged nor does it appear from the evidence that any upper tenant ever made objection to having the water cut off in the lower part of the building when occasion required it to be done. The record shows that it was repeatedly done without complaint from any source. The fact that the cut-off was placed in the store room occupied by the plaintiff was notice that it was intended to be used for the only purpose that such fixtures are used—that is, to cut off the water and prevent it from flowing to the upper part of the building if it became necessary to do so.

It is, however, insisted that the agent of the owners forbade the plaintiff to cut the water off by use of the fixture for that purpose in its store. This contention is not sustained by the evidence. Under the terms of the lease contract the plaintiff was to pay the water rent of the entire building in excess of one dollar per month. When presented with a bill for excess water rent, due under its contract, the plaintiff refused to pay and immediately proceeded to cut off the water, with the avowed purpose of permanently depriving the occupants of the upper floors of the use of the water, and it was against this act that the agent of the owners protested. There is not a word of evidence that the agent had ever intimated that the plaintiff should not cut off the water for the purpose of preventing leakage by reason of frozen or bursted pipes, or for any other good reason.

These considerations are sufficient to show that there is no merit in the plaintiff's claim, and that the damages sustained can only be attributed to its negligence.

Had the plaintiff taken the precaution to use the appliances prepared for its protection, the accident would not have occurred.

The action of the lower court in setting aside the first and second verdicts in favor of the plaintiff and in sustaining the defendants' demurrer to the evidence on the third trial and giving judgment in favor of the defendants is without error and must be affirmed.

*Affirmed.*