## CHARLESTON.

JAMES F. EVANS *v.* NOAH KIRSON *et al.*

Submitted March 15, 1921.   Decided March 24, 1921.

1. LANDLORD AND TENANT—*Owner Liable for Injuries to Tenant's Property by Freezing and Bursting of Water Pipe.*

   The owner of a building, containing storerooms or apartments leased to various tenants, who permits the water to remain in the pipes of a vacant portion of the building in his possession and control, without exercising reasonable precaution to prevent its freezing when the temperature probably may endanger it, is liable to the tenant of a lower floor whose property is injured by the freezing and bursting of a water pipe under such circumstances, unless relieved therefrom by the contributory negligence of the tenant. (p. 350).

2. SAME—*Tenant Failing to Shut Off Water to Prevent Freezing Held Not Contributorily Negligent.*

   Where the owner of such a building has installed therein but one stop-cock or valve, located in the basement, which when closed shuts off the water from the entire building, a tenant having exclusive possession and control of the first floor and basement, who knows of the vacancy of the two upper floors of the building, is not contributorily negligent in failing to close such valve on an evening when the temperature is such as to endanger freezing, when he does not know that the stop-cock controls the water over the entire building, but believes it to relate only to his own leasehold. (p. 350).

3. SAME—*Tenant's Contributory Negligence in Not Closing Valve Covering Water Supply Held for Jury in Action for Damage From Water.*

   Where the testimony is conflicting as to the tenant's knowledge that the stop-cock or valve governs the water supply

over the entire building, and as to his authority to close it, the solution of the conflict so presented is peculiarly within the province of a jury, and its finding, in the absence of a clear preponderance of evidence to the contrary, and of prejudicial error during the course of the trial, cannot properly be disturbed. (p. 346).

4. TRIAL—*Instruction Ignoring Contributory Negligence Held Erroneous, and Not Cured by Other Instructions.*

Where contributory negligence is relied on in defense of an action for wrongful injury, an instruction directing a finding in favor of the plaintiff on certain facts therein set forth, but omitting any reference to the facts tending to establish contributory negligence, and entirely ignoring such defense, is erroneous and cannot be cured by other instructions given in behalf of either party. (p. 351).

Error to Circuit Court, Berkeley County.

Trespass on the case by James F. Evans against Noah Kirson and others. Judgment for plaintiff, and defendants bring error.

*Reversed and remanded.*

*D. W. Snyder, Jr.,* and *H. H. Emmert,* for plaintiff in error.

*Martin & Seibert,* for defendants in error.

LYNCH, JUDGE:

The judgment complained of on this writ plaintiff recovered in an action of trespass on the case for damages sustained by him as a result of an injury to his property, consisting of pool tables, by water escaping from bursted pipes in the two upper stories of a three-story brick building owned by defendants. The latter leased to plaintiff the first story and basement for a period of two years from April 1, 1916, at a monthly rental of $80. The upper stories were not occupied by tenants at the date of the accident, but seem to have been used by defendants for storage purposes. The pipes were a part of the plumbing system installed in the building. They connected with the city's water mains by means of a service pipe which entered the basement of the building and thence carried the water throughout its several

parts. The only provisions made to stop the water flow into the several portions of the building were located, one at the connection with the water main outside, for the convenience chiefly of the officials in charge of the city's water supply, the other in the basement on the inside of the building, for the convenience of the owner or tenant. By means of either it was possible to shut off the water from the entire building.

Saturday night, January 5, 1918, was intensely cold and as a natural consequence the water in the pipes installed in the two upper stories froze, there being no artificial heat to prevent freezing, and exerted such pressure that the piping system yielded and broke or split and thereby caused a leakage and drainage into the room occupied by the lessee. He did not discover the leakage until Sunday evening when he casually entered the building and found his property seriously injured.

His right to recover compensation for the injury done is based upon the assumption that defendants owed him the duty to protect his propery from the danger incident to freezing and bursting pipes in either of the upper stories, by the installation of appliances to cut off the flow of water into such rooms and apartments as were unoccupied by tenants, or by other reasonable means sufficient to furnish similar protection. Defendants to defeat recovery in the action contend that, as there was accessible to plaintiff a stop-cock or valve in the basement, it was his duty to close it when he left the building Saturday night, as at that time he must have realized the imminence of the danger because of general weather conditions, and his failure to exercise that precaution constituted contributory negligence on his part precluding recovery of compensation for his loss. Apart from questions pertaining to the right to file and prove, by way of set-off to plaintiff's claim, rentals due under the terms of the lease and unpaid when the case was tried, excessiveness of the verdict, and the giving and refusal of instructions, the issues to be determined upon this review are as we have stated them to be.

The question of the extent of the landlord's duty to pre-

vent freezing and bursting of water pipes in those parts of the building under his control has never before been presented to this court, so far as we are able to ascertain. But in *Charlow* v. *Blankenship*, 80 W. Va. 200, we held that a lessee might maintain an action to recover damages for the failure of his lessor to exercise due care and diligence in making repairs to that part of the building which he retained in his possession and control, or for the negligent use by the lessor of such part of the building. The present case, however, goes further than that cited, in that here there is no evidence showing that any part of the plumbing system was in a state of disrepair.

It seems that plaintiff did not know that the stop-cock or valve in the basement under his control operated to cut off the water from the entire building. True, defendants testify that they had informed him on numerous occasions of its true function and authorized him to close it in cold weather, but plaintiff flatly denies that he had such information or admonition, and states that he thought it controlled only the water in the pool room, and deemed it unnecessary to exercise further precaution as to that part of the building because he had left it supplied with heat amply sufficient to protect his property from damage. His conduct at the time of the discovery of the leak tends strongly to support his testimony in this respect, for immediately upon seeing the torrent, as he terms it, pouring through the ceiling onto his tables, he obtained a wrench and rushed upstairs seeking to gain entrance into the second floor room and hoping to find a shutoff there. But discovering the door padlocked, he went to the basement and spent considerable time looking among the maze of pipes for a stop-cock other than the one of which he had knowledge. Not finding any, he turned off his, and then for the first time, he says, discovered that it controlled the water, not only in the pool room, but throughout the entire plumbing system. Of course defendants positively assert that they frequently had given plaintiff such information, but opposed to this is plaintiff's equally positive denial, accompanied by conduct which the jury could say supported

his contention. At any rate, the question of plaintiff's authority and knowledge in this respect was presented for the consideration of the jury by defendants' instruction No. 4, clearly calling to their notice defendants' theory of contributory negligence, and as the verdict solved that question in plaintiff's favor, it cannot be disturbed, at least on that ground. Of course, if the latter had known that the valve under his control governed the water supply in the building, as he later discovered it did, and had received authority to turn it off in cold weather, as defendants say he had, he might perhaps have been chargeable with contributory negligence in failing to exercise his right and duty, especially since he seems to have known of the vacancy of the two upper floors and that the turning off of the water would cause no inconvenience to an occupant of the upper floor. However, we express no definite opinion as to that.

A brief review of a few selected authorities dealing with analogous situations in other jurisdictions may be instructive. The case of *Hunter-Smith Co.* v. *Gibson*, 119 Va. 582, is confidently relied on by defendants as decisive of this case. There, as here, plaintiff occupied a room on the ground floor of defendants' three-story building, but, unlike this case, the upper floors were also occupied by tenants. The entire structure was supplied with water through a service pipe leading into the basement, which was within plaintiff's exclusive possession and control. In it, as well as in the storeroom above, were stop-cocks by means of which the water could be cut off from the entire building. There was also a shut-off valve on the second floor, but none on the third where the freezing occurred. Plaintiff based his claim for damages upon the failure of the owners to provide a cut-off for each floor to enable its occupant to avoid injury in cold weather. In holding the defendants not liable for the resulting damage to the goods of the plaintiff, the court found him guilty of such negligence as precluded right to compensation, in that he failed to use the means at hand for his own protection But there is also this further dissimilarity between the facts of the two cases. Plaintiff appears to have known that the

stop-cocks in the basement and on the first floor controlled the entire water system of the building, for, it seems, they had been used on other occasions to prevent just such an accident. He attempted to justify his failure to exercise due caution for his own safety because of the presence of tenants of other floors, but this attempted justification the court brushed aside, holding it to be unavailing. Whatever might be our views under facts similar to those revealed in the Virginia case, it is sufficient to say that each is clearly distinguishable from the other. Moreover in the former case cited defendants did not have possession and control of the part of the building in which the break occurred, as they did in this case.

*Buckley* v. *Cunningham,* 103 Ala. 449, is another case that tends to support the theory relied on to defeat recovery by plaintiff. Tenants of the first floor of defendant's building conducted therein a millinery business. Other stories, two in number, were unoccupied and therefore in the lessor's possession and control. There was no cut-off inside the building, and none outside except the city valve. The plumbing admittedly was good and free from defects. On an extremely cold night, however, the pipes in the vacant upper stories burst and flooded plaintiffs' shop. In reversing a verdict for the latter, the court held that defendant was under no duty to provide valves by which to shut off the water from unoccupied rooms under his control, so long as the plumbing was adequate in other respects, as the tenants, at the time they rented the premises, knew there were no such appliances, and with such knowledge accepted the tenement at a rental based upon the condition as it then existed, and thereby assumed the risk incident to the absence of such equipment. This case represents an extreme view of the reciprocal rights and duties existing between landlord and tenant, and we are not disposed to adopt its conclusions in this instance.

On the other hand, there are several adjudications in support of plaintiff's contention as to the legal duty existing under such circumstances and in harmony with the conclu-

sion we have reached. *Kecoughtan Lodge, etc.* v. *Steiner and Kaufman,* 106 Va. 589, involved an action by the occupant of the ground floor of a 3-story building owned by defendant to recover damages caused by the freezing and bursting of a water pipe near a toilet on the second floor. There was conflict in the testimony as to whose duty it was to cut off the water from the toilet, plaintiff's evidence tending to show that defendant employed a janitor whose duties included the one in question, while defendant's testimony tended to establish that the toilet was under the exclusive control of tenants occupying the first and second floors, whose duty it was to shut off the water on such occasions. But the jury having found in favor of the former, the court declined to disturb the verdict.

In *Moroder* v. *Fox,* 155 Wis. 503, plaintiff, a tenant occupying the ground floor of a building, sued for injuries caused to his goods as a result of the freezing and bursting of a pipe in a vacant flat on the second story, the third floor being occupied. One water cut-off was provided for the entire building, and that was located in the basement, to which plaintiff and defendant had equal access. A clause in plaintiff's lease required him "to turn and let the water out of the pipes on said premises whenever it shall be necessary to do so to prevent it from freezing or injuring said pipes and property." The court held that clause applied only to plaintiff's premises and did not require him to shut off the water from the entire building, and found the defendant liable for the damage originating in the vacant flat, saying: "Knowing that the premises were vacant and unheated, and that the water pipes running through the same to supply the flat on the third floor with water were uncovered and unprotected from frost, it was negligence to allow them so to remain during the winter time." Two members of the court, however, concurred in a dissenting opinion. For cases announcing similar principles, see *Le Vette* v. *Hardman Estate,* 77 Wash. 320; *Martindale Clothing Co.* v. *Spokane & Eastern Trust Co.,* 79 Wash. 643; *Dreeves* v. *Schoenberg,* 82 N. J. L. 335; and also monographic notes in L. R. A. 1917 B, 244 and 17

N. C. C. A. 115, 126 et seq., annotating and discussing many other cases relating to the general subject of the liability of a lessor for damage to goods of a tenant caused by leakage from water fixtures.

From the authorities cited and referred to the consensus of judicial opinion seems to be that the owner of a building, containing storerooms or apartments leased to various tenants, who permits the water to remain in the pipes of a vacant portion of the building in his possession and control, must exercise such reasonable precaution as will tend to prevent its freezing when the temperature probably may endanger it. This he may do by the installation of sufficient appliances to cut off vacant rooms from the general plumbing system, by heating them, or in any other manner reasonably sufficient to safeguard tenants of lower floors. Of course, if the tenant is contributorily negligent in failing to use existing appliances within his control, and which he is authorized and required to use, he may be barred from a recovery for the resulting damage. And where he knows of the vacancy of the floors above him and is aware that he possesses the means and authority to shut off the water from such portions, there may, or may not, devolve upon him a duty to use the appliances at his disposal, as held in *Hunter-Smith Co.* v. *Gibson,* 119 Va. 582, cited. But, though plaintiff probably knew that the upper stories were unoccupied, the jury's finding negatives any such knowledge on his part that the stop-cock in the basement controlled the entire building, and in view of the conflicting testimony that finding cannot be disturbed. Hence in this case we are confronted by a breach of duty on the part of defendants, unrelieved by any finding of contributory negligence by the plaintiff—a situation which imposes upon the former liability for the injury and damage resulting to the latter.

Complaint is made of the court's refusal to give instructions Nos. 1, 2, 3 and 5, requested by defendants. No. 1, directing a verdict for defendants, was rightly refused for reasons already stated. The rest were amply covered by No.

4, given, which presented to the jury the question of plaintiff's contributory negligence.

Plaintiff's instruction No. 1, however, was improperly given. It was a binding instruction directing the jury to find for the plaintiff if from the evidence they believed that defendants did not use due and ordinary means to prevent the escape of the water. It wholly ignored the theory of contributory negligence in failing to close the stop-cock in the basement, as disclosed by defendants' instruction No. 4. Binding instructions ignoring vital issues in a case should not be given, even though such issues are presented by other separate and distinct instructions. *McCreery's Adm'x* v. *Ohio River R. Co.*, 43 W. Va. 110; *Britton* v. *South Penn Oil Co.*, 73 W. Va. 792; *Petry* v. *Cabin Creek Consolidated Coal Co.*, 77 W. Va. 654; *Stuck* v. *K. & M. Ry. Co.*, 78 W. Va. 490; *State* v. *Price*, 83 W. Va. 71.

Defendants also assign as erroneous the refusal of the court to permit them to file a statement of two months' rent, due them at the date of the trial, by way of set-off of plaintiff's claim for damages. They do not press the point in this court, however, and hence in accordance with our rules it is deemed to have been waived and abandoned.

Nor is it necessary to discuss the alleged error of the jury in calculating their verdict, disclosed, as defendants contend, by the paper pinned to and returned with it. The verdict is general and does not in any manner refer to the paper, and no order made the latter a part of the record until after the jury had been discharged. Moreover, the new trial which we are compelled to award renders unnecessary any decision on that point.

For these reasons, we reverse the judgment, set aside the verdict, and remand the case for a new trial.

*Reversed and remanded.*