COMMERCIAL REALTY COMPANY *v.* NATIONAL DISTILLERS PRODUCTS CORPORATION

[No. 16, October Term, 1950.]

*Decided November 3, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Jacob Kartman,* with whom were *Makover & Kartman* on the brief, for the appellant.

*Raphael Walter,* with whom were *Nyburg, Goldman & Walter* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellee sued appellant to recover damages to its goods resulting from the freezing and bursting of a water pipe in part of the premises occupied by appellee as tenant of appellant. The case was heard before Judge Tucker, sitting without a jury, in the Court of Common Pleas of Baltimore City, and judgment was entered in favor of the appellee for the sum of $2,928.79. From that judgment, this appeal is taken.

The building in which the damage occurred was located at 3812-20 East Lombard Street in the city of Baltimore, and was owned by the appellant. It was a brick structure consisting of two stories, with no basement. The appellee was a tenant of a portion of the first floor, consisting of one large room, 137 feet 7 inches on Lombard Street, with a depth of 50 feet. It held this under a lease from the appellant dated July 1, 1948, but had first gone into possession of the premises on December 8, 1944, under the assignment of an earlier lease from the former owner of the premises. Appellant acquired the premises from the former owner on May 9, 1945. Appellee had therefore been in continuous possession of its portion of the premises since 1944. The current lease provided that the premises should be occupied only for storage of empty bottles and cartons and the landlord, by an added typewritten clause, was not obligated to furnish heat.

The second floor space immediately above that occupied by the appellee was occupied also as a tenant by the William Schluderberg-T. J. Kurdle Company, referred to in the record as "S-K". This company had been in continuous possession since June, 1944, under successive yearly leases which provided for occupancy for the storing of merchandise and also contained the typewritten clause that the landlord was to furnish no heat. The first floor space adjoining that of the appellee was occupied by the Filter Service Company, also a tenant of the defendant. This company made use of water in its premises.

The city water line entered the building in the southwest corner of the premises occupied by the appellee. At a point about four to six feet from the point of entrance and in the premises occupied by the appellee was the main valve on the two-inch water line which extended vertically from the entrance line to the second floor. This main valve permitted the turning off of the water in the entire building. There was no wheel on it, and it could be operated only by a wrench. Below the main

valve was a ¾ inch line extending horizontally from the main line and providing the means of carrying water to a lavatory in another portion of the premises occupied by the appellee. There was a turn-off valve in this line. Above the main valve was another ¾ inch line which extended horizontally and carried water to the Filter Service Company. There was a turn-off valve in this line.

At the time of the mishap which caused the damage, the appellee used no water, and had not used any since it took possession of the premises. The water line that ran to its lavatory had been disconnected at the valve, although by whom it is not known. On the S-K premises, about two feet above the floor, there was another valve which would disconnect the water from that portion of the building occupied by S-K. The water line leading from this valve had also been disconnected, but the evidence does not disclose any information as to when, or by whom, this was done. The main valve was not closed and this permitted not only water to pass through the ¾ inch line to the Filter Company's property, but also to fill the vertical two-inch line up to the valve in the S-K premises on the second floor. On the night of December 27, 1948, the valve in the S-K premises burst as a result of freezing, and the escaping water came through the ceiling to the first floor and damaged the property of the appellee stored there. The appellee used this room in accordance with its lease for storage purposes only, and kept no employee there constantly, sending there only when this became necessary in its business. The accident occurred during the Christmas holidays, and it appears from the record that the minimum temperature on December 25 was 17°, on December 26 was 15°, and on December 27 was 17°. Christmas day in 1948 came on Saturday, and the Filter Company, which was the only tenant of the building using water, had been closed down since Friday, the day before Christmas, through Monday the 27th, so that the escaping water was not discovered until the morning of Tuesday the 28th, when one of

its employees noticed it. The appellee was notified at once, but its employees were unable to locate the valve and the city was called to turn off the water at the meter outside of the building.

The appellant, in its brief, states: "At that time plaintiff's [appellee's] employees did not know the main valve was within the plaintiff's [appellee's] premises because the view of it was obstructed by their stored merchandise." The appellant, however, contends that the appellee should have known about this valve, although it had no use for water on the premises and was not interested in the use of water by the Filter Company. The record does not disclose any evidence that any of the employees of the appellee knew anything about this valve, or had ever used it prior to the time of the mishap. Mr. Ormsby, who runs the Filter Service Company, testified that on one or two occasions his water was cut off at the valve on his line, and that on these occasions he called the appellee, and they sent some one up to turn it on. He could not tell when this occurred, but said it happened in cold weather, and he did not know whether it happened before or after the mishap. The record also shows that after the mishap, the appellee turned off the water on several occasions, presumably warned by its previous unpleasant experience, but there is nothing in the record to contradict the admission made by the appellant that at the time of the accident appellee's employees did not know the location of the main valve, though it was in its premises.

On these facts the appellant contends that, inasmuch as the valve was located on the premises leased to the appellee, it was under no duty to turn it off, or to take any action that might prevent the water in the main pipe from freezing, and that the appellee is charged with knowledge of the location of the valve, even though it might not have actually known of it. Cases from other states are cited, one from Virginia, (*Hunter-Smith Co. v. Gibson*, 119 Va. 582, 89 S. E. 886), and one from Alabama, (*Buckley v. Cunningham*, 103 Ala. 449, 15 So.

826), both of which seem to support the contentions of the appellant, and one from Washington, (*Martindale Clothing Co. v. Spokane & Eastern Trust Co.*, 79 Wash. 643, 140 P. 909), which supports the contention of the appellee. We think, however, we need not go beyond our own decisions and that the case is controlled by the decision in *Kinnier v. J. R. M. Adams, Inc.*, 142 Md. 305, 306, 120 A. 838, relied upon by the trial court.

In this last mentioned case, Adams leased from Kinnier the first floor and cellar of a premises of which the second floor was leased by Brager. On a cold night in January, the pipe on the second floor burst and the water came down through the ceiling and damaged the hardware stored on the first floor and in the cellar by Adams. Adams sued the landlord and the tenant of the second floor and recovered a judgment against the landlord, but not against the second-floor tenant. The court referred with approval to a statement in Tiffany in *Landlord and Tenant*, Vol. 1, pp. 641-646, to the effect that the landlord is liable for injuries to a tenant, and to any other person rightfully on the premises, caused by the landlord's neglect to remedy defects in, or by his improper management of, appliances of which he retains control, and has been held liable for injuries caused by leakage from water pipes or other plumbing attachments in his control. The court in that case also referred to a previous discussion of general principles in the case of *Beck & Co. v. Hanline Bros*, 122 Md. 68, 89 A. 377. The court said [142 Md. 305, 120 A. 840]: "* * * a rule, which might be perfectly sound, implying a duty upon a tenant under a verbal agreement when the leased premises were the entire building occupied by the tenant, would fail of applicability where different floors of the building were let to different tenants."

The appellant attempts to distinguish the Kinnier-Adams case on the theory that in that case the appurtenances were not within the sole possession and control of the plaintiff, and the jury could find that the landlord had retained control. We do not find that distinction.

In the case before us, there is no evidence that the appellee ever had used, or even knew of, the cut-off valve in its premises. There was no wheel on the valve, and it was not apparent that it could or should be turned. The landlord rented the building with a water line in it which was obviously apt to freeze if there was no heat, and there was no heat in the building. One of the tenants used water flowing through this unprotected water line. Under these circumstances, it did not protect the appellee from a danger which was apt to occur, and its failure to do so renders it liable. Nor do we think that the appellee itself was in any way responsible. So far as the record discloses, it never used water itself and did not know that water was in the pipe which burst on the floor above.

Under these circumstances, the judgment will be affirmed.

*Judgment affirmed with costs.*