## LEE ET AL. *v.* HOUSING AUTHORITY OF BALTIMORE CITY
### (Four Appeals in One Record)
[No. 31, October Term, 1953.]

454

Decided January 7, 1954.

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Theodore Sherbow*, with whom were *David Friedman, J. Sarsfield Sweeny, Sherbow & Sherbow* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellants.

*J. Gilbert Prendergast*, with whom were *Clark, Thomsen & Smith* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from judgments for the defendant in four suits arising out of a fire at 2401 Maisel Court, in Baltimore. The house at this location was owned by the Housing Authority of Baltimore City, a corporation, and leased to Charles Bramhall and Mildred Bramhall, his wife. As a result of the fire Mrs. Bramhall was burned so severely that she died. Her daughter by a previous marriage, Sharon M. Lee, aged four, received serious burns, as did Charles Bramhall. At the conclusion of the plaintiffs' case the court directed verdicts for the defendant. The questions presented are whether the evidence produced by the appellants was legally sufficient to make a *prima facie* case to be submitted to the jury on the issue of liability, and whether the court properly excluded from the evidence certain entries in the hospital records.

The testimony showed that on June 4, 1950, the Bramhalls were living at 2401 Maisel Court, a one-story dwelling without a basement, containing in the front an entrance hall with a living room on one side and a bedroom and bath on the other. There was a kitchen and alcove pantry in the rear measuring together about 8 x 15 feet. The pantry was partitioned off from the kitchen without any door, and contained an automatic gas hot water heater and tank, about 5 feet high, resting on the floor. The kitchen had a separate entrance from

the rear; the main entrance to the house was into the hall and living room in the front.

On the date mentioned Mr. Bramhall, a bus operator employed by the Baltimore Transit Company on the night shift, returned from work about 5:30 A.M. He fixed his own breakfast and tried to take a bath before going to bed. He found there was no hot water. He testified that he had been instructed by the Housing Authority not to touch the heater. "You are not supposed to light them if they go out," but to report the matter to the Authority. He had reported a similar failure to obtain hot water about a month or six weeks before, and the service man employed by the Authority had corrected the condition the same day. There had been no further trouble. June 4, 1950 being a Sunday, the office was closed and Bramhall did not report the failure. He simply went to bed without examining the heater. His testimony as to the instructions given was corroborated by a neighbor who had lived in Maisel Court for three years prior to the fire. This witness said that the tenants were instructed not to touch the heaters "unless there's danger of some explosion. Take a pipe wrench or Stillson wrench to cut off the gas on the side. Otherwise, you're not supposed to touch it."

Toward evening, while Mr. Bramhall was watching television in the living room with his wife and step-daughter, Mrs. Bramhall asked him what he wanted for his night lunch and he replied that he wanted tuna fish sandwiches. She went into the kitchen. Canned goods were kept on shelves in the pantry opposite the heater. A second or two after she left the room he heard her scream. He rushed into the kitchen and saw her in the pantry with her dress all in flames. He saw flames "All around the automatic hot water heater, about a foot away from it, six inches, all around the floor." He tried to put out the flames on her dress and dragged her out the back door. She yelled, "Where's Sharon?" He ran into the house to find the child. She wasn't in the kitchen or pantry; he found her in

a corner of the bedroom "all in flames." He carried
the child out through the kitchen. "I tripped over my
wife, laying on the floor." Evidently Mrs. Bramhall
had followed him back into the kitchen and fallen there.
Two neighbors rushed into the kitchen, which was "all
flames and smoke," and dragged Mrs. Bramhall out.
She was terribly burned. An ambulance took them
to University Hospital where she died a few hours
later. He testified that on the way to the hospital "she
was trying to talk and I couldn't understand her * * *
she was asking me how I was, was I burned bad, and
how Sharon was—."

Mr. Bramhall testified that there were paint cans on
the pantry shelves as well as canned goods. They had
painted the interior of the house, including the kitchen,
some time before the accident, with ready-mixed paint
supplied by the Housing Authority. The cans in ques-
tion contained paint that had been left over, but the
tops had been tightly replaced. There was no turpentine,
oil or similar material on the shelves. A Battalion Chief
of the Fire Department testified, from examination of
the premises after the fire was extinguished, that the
fire had originated in the pantry. "* * * most of the
burning was in the pantry and of course extended out
into the kitchen and to some extent into the living
room."

The hospital records were offered in evidence, but
certain entries therein were excluded, over objection
"* * * to all portions * * * which purport to state what
was the cause of the alleged injuries * * *." The entries
were as follows:

"Entrance Note and History—Mildred Bramhall—This
23 year old white female was brought to the Accident
Room this evening *after being burned when a gas stove
exploded near her.* She sustained 2° to 3° burns over
95% of the body surface. * * * K. Y. Smith, Jr., M.D."
On the same date an "Entrance Note" for Mildred Bram-
hall was made by J. B. McMinch, Jr. "This 23 year
old white female was admitted via the Accident Room

*following the explosion of a gasoline water heater in a confined area.* The patient was burned over her entire body surface except the soles of feet and scalp approximately 95%—almost all 2nd° possibly some 3rd° * * *." There was also an "Accident Room Report" concerning Charles Bramhall age 28, "Complaint: *Gas explosion at 2401 Maisel Court."*

The appellants contend that these entries should have been admitted under Section 68, Article 35 of the 1951 Code. This section provides that "Any writing or record * * * made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record * * *. * * * All other circumstances of the making of such writing or record * * * including lack of personal knowledge by the entrant or maker, may be shown to affect the weight, but not the admissibility thereof. The term 'business' shall include business, profession, occupation and calling of every kind."

In *Beth. Shipyard v. Scherpenisse,* 187 Md. 375, we held that a hospital record containing an entry that "Patient cut left foot and developed an infection involving entire leg" some days prior to his admission was admissible, although the entrant could have had no personal knowledge of the event recorded. It was pointed out that Maryland has adopted the Model Act formulated in 1927, containing somewhat broader language than the Uniform Act formulated in 1936. It is true in the case of *Beverley Beach Club v. Marron,* 172 Md. 471, 475, where the entry stated that the patient "stated his foot was cut by broken glass," it was said that it was "not the purpose of the statute to create facts which did not exist, and appellee himself testified he did not know what caused his injury." Under the circumstances it would appear that the prior statement had no probative value.

In *Scott v. James Gibbons Co.*, 192 Md. 319, 330, the trial court excluded an entry in hospital records that on "information given by the State Police the man was driving to work at the Calvert Distilleries where he was a guard," at the time of the collision. We said: "Of course such records are admissible, and statements therein showing the history of the patient's physical condition are proper. History in this connection means the physical background as well as the present condition of the patient. It is proper for the record to show the patient was hurt in an automobile accident, but the particulars of such accident, contained in a hospital record, should be deleted and not submitted to a jury in a case like this. This is hearsay." The fact that it is hearsay would not, however, be a fatal objection under the statute, which specifically states that such an objection goes to the weight and not to the admissibility of the statement. Cf. *Morrow v. State*, 190 Md. 559, 562. But the ruling is supportable on the ground that the details of the statement went beyond the legitimate scope of medical inquiry. In the language of the Supreme Court of Pennsylvania, the occurrence recorded must be "pathologically germane to the physical or mental condition which caused the patient to come to the hospital for treatment." *Commonwealth v. Harris*, 41 A. 2d 688, 691 (Pa. 1945). Cf. *Watts v. Delaware Coach Co.*, 58 A. 2d 689 (Del. 1948) and *Green v. Cleveland*, 79 N. E. 2d 676 (Ohio 1948). It may be noted that all these cases were decided under statutes based on the Uniform Act which gives a wider discretion to the trial court as to admissibility. See, however, Judge Medina's discussion of the New York Statute in 30 Cornell L. Q. 449.

In the instant case we think the record of the alleged cause of the burns to be treated was a proper part of the medical history. The entries do not undertake to establish the cause of the explosion, but merely relate to the nature of the substance causing the burns, gas, and the character of the combustion, an explosion. It

is certainly customary and proper to record the type of accident causing the injury, and this information may have an important bearing upon the diagnosis, as indicating what the doctors should look for, and upon the treatment to be applied. We think the information recorded, from whatever source obtained, was not outside the regular course of professional inquiry.

It is true that the entrance notes purport to state a fact not testified to by Mr. Bramhall, *i.e.*, that the heater exploded. His testimony did not indicate that he heard any noise prior to his wife's scream. But his testimony that he saw flames close to and all around the heater, and on his wife's dress, within 2 seconds after she left the room and entered the pantry, indicate that the combustion was sudden and spontaneous, whether audible or not. We think this testimony alone supports an inference that the flames originated in and emanated from the heater, rather than from the paint cans or some other source. While we hold that the entries in the hospital records were improperly excluded, we cannot remand the case for a new trial unless the evidence, including the excluded entries, would have justified the submission of the case to the jury.

The appellants argue that the heater was under the management and control of the defendant and the occurrence was such as does not happen in the ordinary course of events when care is exercised; hence that it may be inferred the explosion resulted from a lack of due care. In short, they invoke and rely upon the so-called doctrine of *res ipsa loquitur*.

The use of the Latin phrase has been criticized as giving to confusion of thought by Chief Judge Bond, dissenting in *Potomac Edison Co. v. Johnson*, 160 Md. 33. Wigmore treats the concept as a "presumption of culpability" arising from particular facts. 9 *Wigmore, Evidence* (3d Ed.) § 2509. Prosser deals with it under the head of circumstantial evidence giving rise to an inference of negligence. *Prosser, Torts* § 43. For a discussion of the Maryland authorities, see Thomsen,

3 Md. L. R. 285 and Farinholt, 10 Md. L. R. 337. In the case at bar we are not concerned with the question as to when, or under what circumstances, if any, the inference may be so clearly rebutted as to require the withdrawal of the ·case from the jury. On this point there seems to be some diversity of opinion. No doubt, the exculpatory evidence must go beyond a mere contradiction, or an assertion of precaution taken. Cf. *Cloverland Farms Dairy v. Ellin,* 195 Md. 663. Here, where the verdicts were directed at the close of the plaintiffs' case, the question is narrowed to whether a *prima facie* case was made out.

It is generally recognized that the phrase cannot justify the imposition of an absolute liability. An inference of negligence cannot be drawn unless "the thing which produced the injury was under the management and control of the defendant" and the "surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the control or management thereof exercise proper care." *Greeley v. Baltimore Transit Co.,* 180 Md. 10, 12. The element of control has an important bearing as negativing the hypothesis of an intervening cause beyond the defendant's control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care. Thus it has been held that the inference is not permissible where the plaintiffs' testimony tends to show an exculpatory cause, *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 263, or where the lapse of time and the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission. *Walker v. Vail,* 203 Md. 321; *Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 460; *State v. Electric Co.,* 162 Md. 84, 91. The division of the court in *Potomac Edison Co. v. Johnson,* supra, and *Cloverland Farms Dairy v. Ellin, supra,* was on the question whether the particular circumstances sufficiently excluded the probability of an

exculpatory cause. Two cases from Ohio illustrate the second point. In *Huff v. Austin*, 21 N. E. 864 (Ohio), it was held that testimony of a boiler explosion while the plaintiff was engaged in erecting a sawmill did not make out a *prima facie* case, for it was reasoned that there were many instances of boiler explosions where there was no want of care in their operation. In *Hiell v. Golco Oil Co.*, 28 N. E. 2d 561 (Ohio), it was held that testimony of a gasoline explosion, while the defendants were actively engaged in blending gasoline at a filling station, raised the presumption.

In the case at bar the control retained by the Housing Authority, as landlord, was a qualified one, and there was at least the possibility of access by others. It did not manufacture the heater but merely installed it. Cf. *State v. Consol. Gas Etc. Co.*, 146 Md. 390, 397, and *McCabe v. Boston Consol. Gas Co.*, 50 N. E. 2d 640 (Mass.). The fact that it operated perfectly for a month or six weeks prior to the explosion would tend to show that it was properly installed. Cf. *Walker v. Vail*, supra, and *Gmurek v. Kajder*, 203 Md. 437. The appellants rely upon *Plunkett v. United Electric Service*, 36 So. 2d 704 (La.) (fire from gas heater). In that case the fire ensued within 39 hours after installation, and the court stressed the fact that "the time elapsing between the installation and the damage was such as to make it reasonably evident that the damage would not have been caused if the device had been * * * properly installed." The trial court's finding of negligent installation was affirmed by a divided court. In *Candler v. Automatic Heating*, 149 S. E. 287 (Ga.), there was evidence of notice to the installer of the defective operation, and failure to repair. The same factor was present in *Kirby v. Atlantic Gas Light Co.*, 67 S. E. 2d 413 (Ga.). Other cases, pro and con, are collected in a note 3 A. L. R. 2d 1448.

Perhaps a more conclusive answer, to the contention that an inference of negligence can properly be drawn in the case at bar, is to be found in the absence of

a duty owed by the defendant under the circumstances.

In *Frenkil v. Johnson*, 175 Md. 592, there was a gas explosion in a building in process of demolition. The cause was not shown, but there was evidence that the defendant's servants knew that gas was escaping in time to have investigated and corrected the condition. The court was at pains to point out that this was the breach of duty upon which liability was predicated, without which the inferences as to causation and negligence would not come into play. It is true that the defendant was a wrecking contractor and not the installer, but even an installer is not liable for an unexplained occurrence, in the absence of testimony, or a permissible inference from testimony, that the defendant's servants were at fault. In the case at bar the retention of control was not physical, but consisted only in retention of the right and duty to adjust or repair it, if it did not function properly. The undertaking was not to guarantee its perfect performance, but only to correct imperfections in its automatic operation upon notice. Cf. *Otis Elevator Co. v. Embert*, 198 Md. 585, 595. There was, of course, no notice and no opportunity to find and correct the condition resulting in the explosion, in the instant case.

Nor do we find a broader duty growing out of the relationship of landlord and tenant. In *Com. Realty Co. v. Nat. Dis. Pr. Corp.*, 196 Md. 274, where a landlord was held liable for the breaking of a water pipe due to freezing, liability was predicated upon the fact that the consequences of maintaining an unprotected water pipe in a portion of an unheated building outside the leased premises, was clearly foreseeable. In *Ross v. Belzer*, 199 Md. 187, 190, (Injury from loose matting) it was said: "It is the general rule that the particular condition which caused the injury must have been made known to the property owner a reasonable time before the accident occurred so that he might have an opportunity to correct it." Cf. *Gladden v. Walker & Dunlop*,

168 F. 2d 321, 322 (D. C.) (injury from a defective switch).

For the reasons indicated we think the appellants failed to make out a *prima facie* case, and the action of the trial judge in withdrawing the case from the jury was correct.

*Judgment affirmed, with costs.*